ALFRED BURKE *v*. SARAH G. ROSENTHAL, CHAIRMAN OF THE COMMISSION ON CIVIL RIGHTS

SUPERIOR COURT        HARTFORD COUNTY        FILE No. 146913

142

Memorandum filed April 5, 1967

*F. Timothy McNamara,* of Hartford, for the plaintiff.

*Marold M. Mulvey,* attorney general, and *F. Michael Ahern* and *Robert L. Hirtle, Jr.,* assistant attorneys general, for the defendant.

KLAU, J. The parties entered into an agreed statement of facts by stipulation as follows: On April 1, 1965, and for a period of time prior thereto, Alfred Burke was employed as a police officer by the city of Waterbury. On December 25, 1963, Alfred Burke was injured while carrying out his duties as a police officer in the city of Waterbury. In December of 1964, Alfred Burke filed an application with the Waterbury retirement board for a disability pension under the provisions of the charter of the city of Waterbury. Alfred Burke's application was denied by said retirement board. On April 1, 1965, Alfred Burke complained to the commission on civil rights that the said retirement board had denied his request for a disability pension because of his color, in violation of subsection (a) of § 31-126 of the General Statutes. The chairman of the commission on civil rights referred the complaint to an investigator for preliminary investigation. After such preliminary investigation, the investigator determined that there was reasonable cause for believing that an unfair employment practice had been or is being committed as alleged in such complaint. On November 24, 1965, after a discussion of the investigation with commission members at a regular meeting, the commission had

a full discussion of this case and the investigator's report and a letter from the Waterbury retirement board rejecting the commission's request that Mr. Burke be pensioned. It was voted that the case be sent to a public hearing, whereupon the investigator certified the complaint and the results of his investigation to the chairman of the commission and to the attorney general. A copy of said certification is marked "exhibit A" and made a part of this stipulation. The attorney general reviewed the certified complaint and the file and issued an opinion to the commission on civil rights that the certification of the complaint was defective. A copy of said opinion, dated January 7, 1966, is marked "exhibit B" and made a part of this stipulation. The commission, on February 15, 1966, notified the complainant Burke that on the basis of the attorney general's opinion it had voted to dismiss his complaint. The chairman of the commission did not appoint a hearing tribunal.

The parties stipulated that the only question involved is the interpretation of § 31-127. The plaintiff claims that the language of the statute is mandatory and requires the chairman to appoint a tribunal upon certification. The defendant claims that the language of the statute is discretionary, even upon certification. The parties further stipulated that if the court finds the language of the said statute mandatory, a writ of mandamus shall issue as prayed for in the complaint. The parties further stipulated that if the court finds the language of the said statute discretionary under the facts, then judgment may issue dismissing the petition. No issue was raised under the agreed statement of facts as to the effect of the failure of the plaintiff to take an appeal from the action of the commission in dismissing the complaint to the Superior Court. This issue was argued on a demurrer to the com-

plaint, which demurrer was overruled *(Shea, J.)*. There is no adequate remedy anywhere else to compel the defendant to perform her statutory duty which is as complete as the remedy by mandamus. See *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 618; *Levitt* v. *Attorney General,* 111 Conn. 634, 645. The agreed statement of facts confines the court solely to the question whether the defendant has discretion after certification of the complaint to her in summoning a hearing tribunal.

The issue before the court is whether that portion of § 31-127 which provides that the "chairman of the commission *shall thereupon* appoint a hearing tribunal of three members of the commission or a panel of hearing examiners to hear such complaint" (italics supplied) is mandatory and requires the chairman to appoint a tribunal, or whether the language allows the chairman to exercise reasonable discretion with relation to such appointment.

Mandamus is available against a public officer to compel the performance of a purely ministerial act. See *Hannifan* v. *Sachs,* 150 Conn. 162, 167. Mandamus is not available against a public official to control the exercise of a discretion vested in him. *Sharkiewicz* v. *Smith,* 142 Conn. 410, 413; *Hannifan* v. *Sachs,* supra.

There is a presumption that the word "shall" in the statute is imperative and mandatory. *Strong* v. *Strong,* 106 Conn. 76, 81; *Colchester Savings Bank* v. *Brown,* 75 Conn. 69, 71; *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419; *State ex rel. Markley* v. *Bartlett,* 130 Conn. 88; *State* v. *Richards,* 74 Conn. 57. On the other hand, the word "shall" to a court has been construed to be merely directory, rather than mandatory, and not to exclude the exercise of reasonable discretion on the part of a court of probate. *State* v. *Doe,*

149 Conn. 216, 228. As against the government, the word "shall" is often construed as "may," unless a contrary intention is clearly manifest. *United States* v. *One 1960 Ford,* 213 F. Sup. 562, 563.

In order to determine how the word "shall" is used in § 31-127, the intent of the legislature must be ascertained. It is established law in Connecticut that the intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. *Bridgeman* v. *Derby,* 104 Conn. 1, 8. A statute should be construed having in view the nature and reason of the remedy and the object of the statute, in order to give effect to the legislative intent. The court is not concerned with the wisdom, or lack of it, of the enactment. It simply must find the intent of the legislature. The intent is to be found, primarily, in the words of the statute. The words in the statute must be given their ordinary and usual meaning without narrowing or changing the meaning beyond the visible intent of the legislature. When a statute is intended to further the general welfare, it should be liberally construed to further that welfare. And a liberal construction does not mean an unreasonable construction.

Reading § 31-127 as a whole, the intention of the legislature is quite clear. It was enacted in 1947 as an integral part of a statute, Public Act No. 171 (Sup. 1947, §§ 1360i–1366i), relating to unfair employment practices. Sup. 1947, § 1365i; Rev. 1949, § 7406. The purpose of the act was to create a commission on civil rights empowered to investigate alleged complaints of discrimination in employment on account of race, creed or color, and the act empowered the commission to appoint investigators, to whom complaints were referred for investigation by the chairman of the commission. Such investigator, after a preliminary investigation by

him that there is reasonable cause for believing that an unfair employment practice has been and is being committed as alleged, shall immediately endeavor to eliminate the unfair employment practice complained of by conference, conciliation and persuasion. In case of failure to eliminate such practice, § 31-127 further provides that "the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general. *The chairman of the commission shall thereupon appoint a hearing tribunal* of three members of the commission or a panel of hearing examiners to hear such complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of such complaint, as the same may have been amended, requiring the person, employer, labor organization or employment agency named in such complaint, hereinafter referred to as the respondent, to answer the charges of such complaint at a hearing before such tribunal, at a time and place to be specified in such notice. The place of any such hearing may be the office of the commission or another place designated by it. The case in support of the complaint shall be presented at the hearing by the attorney general, who shall be counsel for the commission." (Italics supplied.) The statute provides for a hearing with testimony presented under oath. The hearing tribunal is given power to issue cease and desist orders, together with necessary affirmative relief, if it finds that an unfair employment practice has been committed, or to dismiss the complaint if it finds that the respondent has not been engaged in an unfair employment practice.

The agreed statement of facts indicates that the attorney general advised the chairman of the commission that the certification was defective in that

an offer of conciliation by the employer, although fair and reasonable, was rejected. The statement of facts also indicates that the chairman of the commission, relying on the opinion of the attorney general, refused to summon the tribunal. The attorney general was thus going behind the certification, although the certification had been in effect directed by the commission, to overrule the investigator's certification and substitute the attorney general's evaluation for that of the investigator so far as efforts regarding conciliation and persuasion were concerned.

In enacting § 31-127, it was the intent of the legislature to impose a mere administrative duty upon the chairman of the commission. It was for her to appoint a hearing tribunal; then the duty shifts to the tribunal to determine whether an unfair employment practice exists. There must be a hearing upon certification of the complaint. The chairman cannot conduct a hearing under § 31-127, nor can the attorney general. The duty and power to ascertain whether an unfair employment practice exists, after certification of the complaint by the investigator, have been given by the legislature to the hearing tribunal. Whether the complaint will be dismissed will be determined after the evidence is presented to it. The filing of the copy of the complaint with the attorney general does not under the statute require his concurrence in the certification of the complaint and in the summoning of a hearing tribunal by the chairman of the commission. The attorney general is not called upon to summon the tribunal. He acts solely to prosecute the complaint. The reluctance of the attorney general to prosecute a complaint which he feels he cannot prove is, as has been stated, easily understandable. It is, however, not an unusual situation where public officials are concerned.

In *Levitt* v. *Attorney General*, 111 Conn. 634, the attorney general raised the same argument as does the defendant in the present case. There, too, the claim was that discretion was vested in the attorney general in bringing the complaint sought by 100 petitioners before the Superior Court, when the attorney general felt no probable cause existed. But the Supreme Court held that there was no discretion vested in the attorney general to determine the existence of probable cause and it was mandatory for him to bring the complaint upon such a petition to the Superior Court for that court to determine the merits of the complaint.

It should also be noted that the peremptory character of the word "shall," as used in the statute with respect to the duty of the chairman of the commission to summon the hearing tribunal, is further emphasized by the adverb "thereupon." The word "thereupon" means "[i]mmediately after that; at once; without delay". Webster, New International Dictionary (2d Ed. 1958). The language of the statute and its intent require immediate action by the defendant, upon certification of the complaint and the filing of the results of the investigation, to appoint a hearing tribunal to hear the plaintiff's complaint. The act to be performed by the defendant is a ministerial one involving no discretion.

Accordingly, the plaintiff is entitled to relief, and judgment is entered for the plaintiff for the issuance of a writ of mandamus as prayed for.