ROSIE S. WILLIAMS *v.* COMMISSION ON CIVIL RIGHTS OF THE STATE OF CONNECTICUT ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 113796
AT NEW HAVEN

Memorandum filed May 9, 1969

*William I. Mark,* of Meriden, for the plaintiff.

*Robert K. Killian,* attorney general, and *Robert L. Hirtle, Jr.,* and *F. Michael Ahern,* assistant attorneys general, for the named defendant.

*John D. Fassett,* of New Haven, for the defendant General Motors Corporation.

KLAU, J. This is an appeal from an order of the civil rights commission dismissing the plaintiff's complaint that the defendant General Motors Corporation had discriminated against her in violation of § 31-126 of the General Statutes. Her complaint to the commission had claimed that General Motors had committed an unfair employment practice by terminating her employment because of her refusal to work her regular shift assignments, which involved work between sundown on Friday and sundown on Saturday. She claimed that since such refusal was based on her religious convictions as a Seventh-Day Adventist, the refusal of General Motors to allow her to absent herself from her regularly scheduled employment at such times on such days constituted religious discrimination.

The appeal alleges that the commission on April 7, 1967, "dismissed for lack of evidence" plaintiff's complaint and on May 17, 1967, denied reconsideration "for lack of sufficient and substantial reason for granting" such request. The relief requested by the amended appeal is an order vacating and setting aside the order of the commission or, in the alternative, modifying the commission's order "so that New Departure Division is ordered to reinstate the petitioner as an employee, not to require her to work on her Sabbath, and to pay her back wages." It is the plaintiff's claim that the Connecticut Fair Employment Practices Act, chapter 563 of the General Statutes, requires the defendant General Motors to allow her to absent herself from work from sundown Friday to sundown Saturday. It is

apparent that plaintiff's broad claim is that all Connecticut employers must allow any of their employees to absent themselves from their regularly assigned work at any time such employees base their absences on their religious convictions. Section 31-126 (a) of the General Statutes provides as follows: "It shall be an unfair employment practice (a) for an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, because of the race, color, religious creed, age, national origin or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment . . . ."

At the hearing on April 8, 1969, there was submitted to the court by counsel for the commission a file of documents which it was represented constituted the entire record of the commission pursuant to plaintiff's complaint, and it has been agreed by all parties that that submission can be considered compliance with the filing requirement of the statute.

The plaintiff claims the right of review under § 31-128 (d) of the General Statutes, which provides in relevant part: "Any respondent *or complainant* aggrieved by a final order of a hearing tribunal *or any complainant aggrieved by the dismissal of his complaint by the commission may obtain a review of such order in the superior court . . . ."* The italicized portions of the statute were added by Public Act No. 472 of the 1963 session of the General Assembly, which was originally House Bill 2585. The legislative history of this bill indicates that the amendment sought to give the plaintiff a right to appeal from the dismissal of his complaint, even though such dismissal was based on a finding of no reason-

able cause by the investigator under § 31-127 of the General Statutes and even though no proceedings had taken place before any hearing tribunal. Hearings on H.B. 2585 before the Joint Standing Committee on Judiciary and Governmental Functions, 1963 Sess., pt. 3, p. 742.

Prior to the adoption of this amendment to § 31-128 (d), the respondent only could take an appeal from an adverse decision of a hearing tribunal. This amendment gave the complainant not only an equal right with the respondent of appealing from a decision, adverse to him, rendered by a hearing tribunal but also gave the complainant the right to appeal from an order of the commission dismissing his complaint. Section 31-127 of the General Statutes does not set up a procedure to be followed in the event the investigator determines that there is no reasonable cause to support a complaint and, therefore, recommends a dismissal of the complaint. Nor is there any statutory procedure for a review of the investigator's recommendation of dismissal by the commission itself. Apparently, under its own rules, the commission reviews the reports of its investigators in such cases and did so in this case.

In view, however, of the amendment and the unmistakable intent of the General Assembly to permit an aggrieved complainant to appeal from an order dismissing his complaint, despite the lack of stattutory procedure in such cases, as well as a lack of the transcript to review the action of the commission, the Superior Court has jurisdiction to hear his appeal. Hearings on H.B. 2585 before the Joint Standing Committee on Judiciary and Governmental Functions, 1963 Sess., pt. 3, pp. 741–43. A substantially similar result was arrived at, without statute, by the New York Court of Appeals in *Matter of Jeanpierre* v. *Arbury,* 4 N.Y.2d 238 (1958). This

appeal, like those from most other administrative agencies, is limited to a review of the actions of the commission and no new evidence or issues can be considered by the court. *Board of Education* v. *Commission on Civil Rights,* 153 Conn. 652 (1966); *Scovill Mfg. Co.* v. *Commission on Civil Rights,* 153 Conn. 170 (1965); *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537 (1953). The court cannot try the case de novo. To impose such an obligation on the court might well be unconstitutional.

The file of the commission contains reports from two investigators of investigation made by them together with their recommendations of dismissal. Pursuant to the statute, Investigator Hogan undertook a further investigation of the formal complaint, including the obtaining of copies of the applicable collective bargaining agreements, which agreements are included in the file examined by the court, and determined that the union did not wish to press the employer to allow an exception to the agreed shift rotation procedure for plaintiff, and he wrote a further report dated October 31, 1966, recommending that "the respondent not be held guilty of discriminating agaist complainant because of her religion." On February 16, 1967, plaintiff advised the commission that she "wanted to file a new and different complaint, alleging discrimination because of color"; she complained of the prior investigation and was unwilling to accept the conclusion that General Motors was within its rights in requiring from her "a normal work schedule as outlined for other employees"; and she cited another Seventh-Day Adventist employee who she claimed was not required to work on their Sabbath. Investigator Vigezzi conducted a further investigation which satisfied him that plaintiff's color had nothing to do with her termination and that plaintiff's assertions with respect

to the other employee were erroneous. As indicated in his report dated March 7, 1967, Vigezzi then advised plaintiff that he was recommending dismissal of her complaint.

On April 7, 1967, plaintiff was given formal notification that the commission voted that there was lack of evidence to support her complaint; in her request for reconsideration dated April 12, 1967, she reiterated that "I was terminated from my job because of refusal to work on my Sabbath" and "I do not work on my Sabbath regardless of what Mr. Vigezzi found about other employees working on this day." On May 17, 1967, plaintiff was given formal notice that the commission would not reconsider its decision of April 7, 1967, dismissing her complaint for lack of evidence.

The commission file contains copies of an order by the Michigan civil rights commission, dated March 22, 1966, rejecting a claim of religious discrimination on similar facts and a press release, dated June 17, 1966, regarding a similar holding by the federal equal employment opportunity commission. Both orders relied upon the right of an employer to establish a regular work week applicable to all employees notwithstanding any possible effect on religious observance of the employees. The defendant commission, in similarly relying on that right, did not act illegally, arbitrarily, or capriciously.

The foregoing steps by the commission followed its rules and the procedure outlined in § 31-127 of the General Statutes. That procedure was analyzed in detail in *Burke v. Rosenthal,* 27 Conn. Sup. 141 (1967). The statute is silent on the procedure to be followed in a case, like the present one, where the investigator determines that there is no "reasonable cause" for finding an unfair employment practice.

The plaintiff relies on *Sherbert* v. *Verner,* 374 U.S. 398 (1963), to support her claim, but that case did not involve a similar statute or a right to compel a private employer to accede to his employees' religious need. To the contrary, as indicated at the outset of the opinion, the claim for unemployment compensation only arose because the plaintiff had been discharged and had been unable to obtain other employment owing to her refusal to work Saturdays. There is no implication in the decision that any of the employers thus involved were guilty of discrimination. The sole holding of the divided court was that denial of unemployment compensation benefits solely because of refusal to work based on religious belief constitutes an abridgment of the right to free exercise of religion as provided by the first amendment, made applicable to the states by the fourteenth amendment. Neither amendment to the constitution places any prohibition on nongovernmental action. *Monroe* v. *Pape,* 365 U.S. 167 (1961); *Collins* v. *Hardyman,* 341 U.S. 651 (1951). It is quite clear from the file of the commission that General Motors did not discharge the plaintiff because of her religious creed. She was terminated because she refused to work her regularly assigned shifts.

In conclusion, the order of the commission affirming the action of the investigators and dismissing the plaintiff's complaint was not illegal, nor was it arbitrary or capricious.

Judgment may be entered dismissing the appeal.