**Madison SMITH**

**v.**

**PERKIN–ELMER CORPORATION.**

Civ. No. 15749.

United States District Court,
D. Connecticut.

Nov. 16, 1973.

David M. Lesser and William H. Clendenen, Jr., New Haven, Conn., for plaintiff.

Francis J. McNamara, Jr., and Ridgway M. Hall, Jr., Stamford, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

NEWMAN, District Judge.

Defendant moves to dismiss this action in which plaintiff alleges racial discrimination in private employment, in violation of 42 U.S.C. §§ 1981, 1982 and the Thirteenth Amendment. Defendant contends that jurisdiction is lacking because required administrative remedies have not been exhausted, and that the action is barred by the applicable statute of limitations.

Plaintiff was employed by defendant as a draftsman for seven and one half years until March 10, 1972, when he voluntarily left the defendant company, allegedly because of his failure to receive a promotion. On May 1, 1973, he instituted this action, claiming that he was denied promotion on grounds of his race, and that defendant selected less qualified White employees for advancement instead of him. At no time during or following his employment did he file any charge of discrimination against the defendant with the Connecticut Commission on Human Rights and Opportunities, Conn.Gen.Stat. § 31–122 et seq., or the United States Equal Employment Opportunity Commission (hereafter EEOC), 42 U.S.C. § 2000e et seq.

Since § 1981 provides a sufficient basis for plaintiff's cause of action, it is unnecessary to determine whether the suit could be based on § 1982 or directly on the Thirteenth Amendment. The issues become whether administrative remedies must be exhausted and what statute of limitations applies to a § 1981 suit.

█ While conceding that § 1981 forbids racial discrimination by private employers,[1] and that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., did not impliedly repeal it, defendant contends that the two statutes are in "irreconcilable conflict," Posadas v. National City Bank, 296 U.S. 497, 502, 56 S.Ct. 349, 80 L.Ed. 351 (1936), unless plaintiffs under § 1981 are required to exhaust the Title VII administrative remedies of conciliation, investigation and informal settlement provided by the EEOC (including the requirement that complaints first be made to the appropriate state agency). If plaintiffs under § 1981 are permitted to deliberately bypass this conciliation machinery, defendant argues, the Congressional purposes and policies of Title VII will be undermined, if not nullified.

█ Under Title VII, a plaintiff must file charges with the EEOC, and defer to that agency for a minimum period before bringing suit.[2] That period gives the EEOC an opportunity to investigate the charge, and, if it finds reasonable cause to believe that an unlawful employment practice has occurred, to attempt conciliation. Exhaustion of these remedies, as well as initial filing of charges within ninety days of the allegedly unlawful practice, are jurisdictional prerequisites to Title VII suits. McDonnell Douglas Corp. v. Green, 411 U. S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Culpepper v. Reynolds Metals, 296 F.Supp. 1232 (N.D.Ga.1969).

Whether these requirements are to be imposed for § 1981 suits involves a somewhat special question of statutory construction. Should a relatively modern statute be construed as engrafting its procedural requirements on to an ancient statute of overlapping but not coextensive coverage? Section 1981, derived from the Civil Rights Act of 1866, 14 Stat. 27, creates a cause of action, *inter alia*, for racial discrimination in employment; Title VII, enacted in 1964, creates a cause of action for em-

---

1. Although some courts have held to the contrary, *see, e. g.,* Smith v. North American Rockwell, 50 F.R.D. 515, 519 (N.D.Okl.1970), persuasive authority has construed § 1981 to forbid racial discrimination by private employers. *See* Williamson v. Bethlehem Steel, 468 F.2d 1201, 1204 n. 2 (2d Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1893, 36 L.Ed. 2d 390 (1973); Brady v. Bristol-Myers, 459 F.2d 621 (8th Cir. 1972); Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476 (7th Cir. 1970); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970); Young v. International Telephone and Telegraph Co., 438 F.2d 757 (3d Cir. 1971).

Neither the Supreme Court nor this Circuit has spoken dispositively on the question, but Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1967), strongly supports such application of § 1981. Although the Court dealt only with § 1982, the opinion explicitly overruled Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906), *see* Jones v. Alfred H. Mayer Co., *supra*, 392 U.S. at 442 n. 78, 88 S.Ct. 2186,

which had commonly been read to preclude application of § 1981 to private employment discrimination. The opinion also states that such private discrimination was among the wrongs that the Civil Rights Act of 1866 was intended by Congress to remedy, Jones v. Alfred H. Mayer Co., *supra,* 392 U.S. at 427, 88 S.Ct. 2186. Substantial evidence exists for that reading of Congressional intention. *See* Young v. International Telephone and Telegraph Co., *supra,* 438 F.2d at 760 n. 4; Note, Racial Discrimination in Employment under the Civil Rights Act of 1866, 36 U.Chi.L.Rev. 615, 619 (1969) ("While Congress did not debate the scope of the term 'contracts,' the one specific contract which was referred to and discussed was the employment contract," *id.* at 619.) There is no indication that Congress intended in restating § 1981 in 1870 or 1874 not to rely upon the Thirteenth Amendment or to restrict § 1981 to cases involving state action.

2. The minimum period is thirty days if the sole agency involved is the EEOC, and 180 days if a state agency is involved. *See* 42 U.S.C. § 2000e–5(e).

ployment discrimination based on race, color, religion, sex, or national origin. The problem of determining the proper construction of the 1964 legislation is complicated by the fact that not until the Supreme Court decided Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, in 1967 was there an authoritative construction of the Civil Rights Act of 1866 that foreshadowed application of § 1981 to private employment discrimination. Thus the issue becomes: did Congress in 1964 create procedures for remedying employment discriminations that should apply to a prior statute that was subsequently construed to prohibit employment discrimination based on race?

There is no authority in this Circuit on the issue, and other circuits are divided. The Seventh has held that exhaustion is required, except in cases where the employee "pleads a reasonable excuse." Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476, 487 (7th Cir. 1970). See also Allen v. Pipefitters Local Union 208 of Denver, Colorado, 56 F.R.D. 473 (D. Colo.1972); Tolbert v. Daniel Construction Co., 332 F.Supp. 772 (D.S.C.1971). The Third and Fifth Circuits, however, have held that exhaustion of Title VII administrative remedies is not a jurisdictional prerequisite to § 1981 suits. Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971); Caldwell v. National Brewing, 443 F.2d 1044 (5th Cir. 1971); see also Macklin v. Spector Freight Systems, Inc., 5 E.P. D. 7769, 7780 (D.D.C.1973). The approach proposed by the Third Circuit, and endorsed by the Fifth, was that District Courts use their discretion to "suggest to defendants in certain cases

. . . resort to the healing remedies of conference, conciliation, and persuasion." Young v. International Telephone & Telegraph Co., supra, 438 F.2d at 764; Caldwell v. National Brewing, supra, 443 F.2d at 1045.[3]

The conflict among the circuits is not surprising in view of the absence of clear Congressional guidance. Defendant relies on 42 U.S.C. § 1988, which provides that the jurisdiction of district courts conferred by the provisions of the chapter that includes § 1981 "shall be exercised and enforced in conformity with the laws of the United States." But this reference to federal law is no aid in determining the content of federal law. Defendant does not claim that the terms of Title VII make its provisions applicable to § 1981 suits. Nor can it seriously urge that there is any indication of Congressional intention to accomplish such a result. Indeed, as defendant points out, there is no reason to expect that in 1964 Congress would have considered whether to apply Title VII procedures to § 1981 suits, because § 1981 had not then been construed to create a cause of action for private racial discrimination in employment. Rather than argue from a non-existent 1964 Congressional intent, defendant contends that once § 1981 was broadly construed after the 1967 decision in Mayer Co., canons of statutory construction require a harmonizing of the statutes to avoid their inconsistent application.

There are several reasons why Title VII requirements should not be construed to apply to § 1981 suits. First, § 1981 concerns an important civil right, and if vindication of such a right is to be procedurally limited, Congress should do so expressly and define the

3. As a practical matter, the two positions may have the same results in many cases, depending on the scope of the Seventh Circuit's exception. Waters explicitly avoided holding that exhaustion is a jurisdictional prerequisite "in all cases," Waters v. Wisconsin Steel Works of International Harvester Co., supra, 427 F.2d at 486. While declining to "define the full scope of the exception," id. at 487, it specified that intentional bypass should be precluded, implying that unintentional bypass may be a "reasonable excuse." The question may be raised whether a court has the power to make such exceptions, assuming the existence of a jurisdictional requirement. An exception making jurisdiction turn on the intentions of the parties seems particularly vulnerable to attack. The issue of intention does not arise in this case, since the plaintiff does not claim that his bypassing the EEOC was inadvertent.

limitation with precision. *Cf.* United States v. Welden, 377 U.S. 95, 103 n. 12, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964); United States v. Silverman, 132 F.Supp. 820 (D.Conn.1955); 1 Sutherland, Statutory Construction (3d Ed.) 365–66.

Second, the inconsistency asserted by defendant does not concern the coverage of the two statutes nor grounds of liability. Such conflicts might warrant a harmonizing interpretation to avoid results that conflict on the merits. No such conflict arises here if a § 1981 plaintiff is permitted to sue without invoking the administrative remedies required of a Title VII plaintiff.

Third, Congressional inaction in the years since the *Mayer Co.* decision becomes significant. In response to decisions applying § 1981 to private employment discrimination without Title VII requirements, Congress could have amended § 1981 to accomplish the result now urged by defendant. Indeed, a clear opportunity to do so arose in 1972 when Title VII was amended to enhance the enforcement effectiveness of the EEOC.[4] Congress declined to extend Title VII's jurisdictional prerequisites, and the legislative history accompanying the Title VII amendments manifests its disappointment with the "emphasis on voluntariness," its abandonment of reliance on conciliation, and its determination that discrimination by private employers be ended without further delay.[5]

Finally, there are sound reasons why Congress would not have wanted to apply the Title VII requirements to § 1981 suits. To the extent plaintiffs intending to sue under § 1981 presently bring their grievance first to the EEOC, exhaustion is a mere formality. Because of current backlogs, the EEOC rarely reaches a finding of cause or no cause, much less attempts conciliation, within the mandatory waiting period. Title VII plaintiffs need wait no longer than the minimum period, regardless of the stage reached in the EEOC proceedings. Dent v. St. Louis-S. F. Ry., 406 F.2d 399 (5th Cir. 1959); Johnson v. Seaboard Air Line R. R. Co., 405 F.2d 645 (4th Cir. 1968). Court actions under Title VII are *de novo* proceedings, McDonnell Douglas Corp. v. Green, *supra,* 411 U.S. at 799, 93 S.Ct. 1817, and thus findings by the EEOC with respect to cause or other matters do not preclude suit, Robinson v. Lorillard Corp., 444 F.2d 791, 800 (4th Cir. 1970); Flowers v. Local 6, Laborers International Union of North America, 431 F.2d 205 (7th Cir. 1970). The EEOC's record on conciliation—its failure, for example, to reach even partial settlement in more than fifty percent of its cases—leaves a party little reason for reliance on administrative remedies if he is able to sue under § 1981. See Note, Developments in the Law—Employment Discrimination and Title VII in the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1245 (1971); Note, Racial Discrimination in Employment under the Civil Rights Act of 1866, 36 U.Chi.L.Rev. 615, 632 (1969).

The major incentive for reliance on the EEOC—the much smaller cost of bringing such actions in comparison to

---

4. *See* P.L. 92–261, § 4 (March 24, 1972); 86 Stat. 104. Under the 1972 amendments, the Commission's authority was expanded to include, for example, bringing civil actions against respondents, a power previously accorded only to the Attorney General. While the EEOC must still defer to the appropriate state agency in many cases for sixty days, it is authorized to move more quickly in seeking injunctive relief on the basis of a preliminary investigation whenever "necessary to carry out the purposes of this Act." 42 U.S.C. § 2000e–5(e).

5. *E. g.,* "Effective remedies have not resulted from the present practice . . . It is the emphasis on voluntariness that has proven most detrimental to the successful operation of Title VII." H.R. Report No. 92–238, 92d Cong., 2d Sess. 2, 7 (1972), U.S.Code Cong. & Admin.News, pp. 2139, 2144. Of the cases in which reasonable cause was found, amounting to more than 63 percent of the total of 35,445 investigated, the EEOC succeeded in achieving total or even partial conciliation in less than half. "In cases posing the most profound consequences, respondents have more often than not shrugged off the Commission's entreaties and relied upon the unlikelihood of the parties suing them." *Id.,* at 7 U.S.Code Cong. & Admin.News, p. 2144.

suits under § 1981— is undiminished by not imposing a requirement of exhaustion for § 1981 suits. Under Title VII, the filing proceedings are relatively simple, and do not require the assistance of a lawyer. The complainant's commitment is "minimal in both time and money." Note, 36 U.Chi.L.Rev. *supra,* at 640. The grant of new powers to the EEOC in 1972, giving the agency increased authority to take the initiative on behalf of complainants, adds to this incentive for proceeding under Title VII before suing under § 1981.

Defendant contends that the line of reasoning relied upon by the Fifth and Third Circuits is undermined by a passage in McDonnell Douglas Corp. v. Green, *supra,* 411 U.S. at 792, 93 S.Ct. at 1822:

> Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. §§ 2000e–5(a) and 2000e–5(e).

Defendant argues that the Court's reference to "a federal action" included suits under § 1981, meaning in effect *any* federal action. The issues before the Court in that case, however, involved exclusively Title VII. Although the plaintiff included a § 1981 claim in his post-trial brief below, the District Court decided that it was barred by the applicable statute of limitations, see Green v. McDonnell Douglas Corp., 318 F.Supp. 846, 849 (E.D.Mo.1970), and the dismissal of this part of the complaint was affirmed

on appeal, see Green v. McDonnell Douglas Corp., 463 F.2d 337, 340 (8th Cir. 1972). No review of this issue was sought in the Supreme Court, and no issue regarding § 1981 was before the Court. Indeed, there is no mention of the 1866 statute in the entire opinion.

Under these circumstances, defendant's strained reading of the *McDonnell Douglas* passage cannot be accepted. The Supreme Court did not significantly restrict § 1981 suits, resolving this complex controversy among the Circuits, in so brief and conclusory fashion. Until the Supreme Court deals with the issue, the conclusion best supported by the policies of the statutes and consistent with the approach in this Circuit, see Williamson v. Bethlehem Steel Corp., *supra,* 468 F.2d at 1204, n. 2, is that exhaustion of EEOC administrative remedies is not a jurisdictional prerequisite to § 1981 suits.

As a second ground of dismissal, defendant contends that this action is barred by Title VII's statute of limitations,[6] applicable to § 1981 actions pursuant to § 1988. Section 1981 has no such statute of its own. Under § 1988, as defendant urges, a pertinent statute of limitations should be sought first from federal law and then, if none is adapted to the same object, from the law of the appropriate state.

Almost all courts considering the matter have found "there is no federal statute of limitations applicable to § 1981," Young v. International Telephone and Telegraph Co., *supra,* 438 F.2d at 763, and have applied the most nearly analogous state statute of limitations. See, e.

---

6. Under § 2000e–5(d), as amended § 2000e–5(e), plaintiff was required to file a charge with the EEOC within ninety days after the alleged unlawful employment practice. If he had first filed charges with the Connecticut Commission on Human Rights and Opportunities, the mandatory period would have been 210 days after the practice or thirty days after the termination of state proceedings. Effective March 24, 1972, the applicable limitations periods were expanded from ninety days to 180 days, and from 210 days to 300 days, § 2000e–5(e). Defendant correctly contends that these expanded periods are inapplicable in this case

because the alleged discrimination occurred prior to the effective date, and that this action would be barred even under these expanded periods.

Under the procedure of § 2000e–5, plaintiff would have been required to file suit within thirty days of receipt of a "right to sue" letter from the EEOC (the period applicable effective to March 24, 1972, is ninety days). Before taking any action on charges, the EEOC is required to notify the appropriate state agency, if one exists, and afford it at least sixty days to attempt to remedy the matter, § 2000e–5(d).

*g.,* Waters v. Wisconsin Steel Works of International Harvester Co., *supra,* 427 F.2d at 488; Henig v. Odorioso, 385 F. 2d 491 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). A number of courts have specifically considered and rejected the applicability of the Title VII limitations to § 1981 suits. See, *e. g.,* Young v. International Telephone and Telegraph Co., *supra,* 438 F.2d at 763 n. 9; Macklin v. Spector Freight Systems, Inc., 5 E.P.D. ¶ 8605, 7780 (D.D.C.1973); see also Buckner v. Goodyear Tire & Rubber Co., 339 F.Supp. 1108, 1117 (N.D.Ala.1972).

■ Title VII limitations are not adapted to § 1981's purposes in a number of important respects. The governmental interests in limiting access under Title VII are "distinctly different and greater than are involved under § 1981." Young v. International Telephone and Telegraph Co., *supra,* 438 F.2d at 763. The administrative process established by Title VII is more easily commenced by complainants and, *after* the charge is filed, it is the *agency* that carries both the burden and initiative of investigation. In seeking the judicial remedies of § 1981, the *plaintiff* must build his own case, generally *prior* to commencement of the action. The coverage of Title VII is broader, and there is the possibility that the EEOC will participate in the resulting lawsuit, summoning its litigative arsenal against the other party. The need for preventing staleness of claims and unfair surprise—which is the major purpose of imposing a shorter statute of limitations, *cf.* Macklin v. Spector Freight Systems Inc., *supra,* 5 E.P.D. at 7779 n. 30—may be correspondingly greater under Title VII. To the extent that conciliation and informal settlement continue to be goals of the Title VII machinery, a shorter limitations period may be desirable to clear the air quickly of labor grievances and forestall labor-management acrimony resulting from the threat of EEOC action long after the event. Finally, and perhaps most importantly, the coverage of Title VII is much broader than that of §

1981, and the seriousness of employment discrimination on *racial* grounds may warrant a longer state of limitations.

■ Defendant further contends that if the Title VII period of limitations is not adopted, the applicable state statute is the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. § 31–122 et seq., which includes a ninety-day period. That statute, defendant argues, is the only one under state law that would provide relief against racial discrimination by employers, and is therefore analogous. The Act sets up administrative machinery comparable to that of Title VII, with procedures for filing of complaints, findings of "reasonable cause," initial attempts at "conciliation and persuasion," and appointment of a hearing tribunal to make findings and issue cease and desist orders against unfair employment practices. Conn.Gen.Stat. § 31–127.

For the same reasons that the Title VII period of limitations is inapplicable to § 1981, this one is also. Similar state statutes of limitations have been rejected for § 1981 purposes by other courts. See, *e. g.,* Waters v. Wisconsin Steel Works of International Harvester Co., *supra,* 427 F.2d at 488. Moreover, the Connecticut statute has a feature that makes it particularly inappropriate: complainants must wait until they are "aggrieved" by a final order of the hearing tribunal or by dismissal of complaints before bringing suit, and the tribunal's findings, if supported by substantial and competent evidence, are conclusive and binding on the reviewing court. No new evidence or issues can be considered by the court, nor *de novo* proceedings held. Conn.Gen.Stat. § 31–128; Williams v. Commission on Civil Rights, 28 Conn.Supp. 341, 260 A.2d 889, aff'd, 158 Conn. 622, 262 A.2d 183 (1969). One of the essential features of a § 1981 action is a *de novo* proceeding, regardless of whether the plaintiff has exhausted Title VII administrative remedies and the interests in the length of the limitation period are therefore fundamentally different.

While rejecting limitations comparable to state civil rights acts like Conn. Gen.Stat. § 31–127, authorities have differed on whether the most appropriate state statute is the residuary or a "catch-all" provision, Waters v. Wisconsin Steel Works of International Harvester Co., *supra*, 427 F.2d at 488; Macklin v. Spector Freight Systems, Inc., *supra*, 5 E.P.D. at 7779; or the one governing contracts, Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1017 n. 15 (5th Cir. 1971); or the statute applicable to torts, see Larson, The New Law of Race Relations, 1969 Wisc.L.Rev. 470, 499 (1969). The question need not be resolved in this case, however, because Connecticut has no residuary statute of limitations, and this action is not barred by the statutes applicable to either contracts or torts, six and three years respectively, see Conn.Gen.Stat. §§ 52–576, 52–577.

Accordingly, defendant's motion to dismiss is denied.