[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the defendant, Commission on Human Rights and Opportunities' (CHRO) dismissal for lack of reasonable cause of plaintiff's complaint against defendant, CT Page 3079 United Illuminating Company (U.I.) alleging employment discrimination based upon physical disability.
The Return of Record ("ROR") discloses the following factual history. The plaintiff began employment with the defendant U.I. on or about September 26, 1969 and the last position he held was that of "buyer" in the purchasing department. (ROR, Item 17). In December 1987, it was suggested by plaintiff's supervisor that the plaintiff receive professional counseling, which he did from Dr. Dolan (ROR, Item 60). Dr. Dolan sent a letter dated January 4, 1988, (ROR, Item 2). in which he strongly recommended that the plaintiff be reassigned to another position because of "a chronic personality clash" between the plaintiff and his supervisor, which "appears to have had consequences deleterious to his health, particularly his hypertension which has become a serious problem in recent months." (ROR, Item 2). The plaintiff claims that thereafter, Mr. Manniel, Manager Training/Human Resources, told him that he was a "medical liability" because of his hypertension and would likely be terminated. (ROR, Item 5). Mr. Manniel denies making such a statement. (ROR, Item 18).
Thereafter, on January 20, 1988, the plaintiff was told to either resign or be terminated, and the plaintiff resigned. (ROR, #5). The plaintiff claims that he was discharged because of his physical disability (hypertension) and that the defendant U.I. did not make reasonable efforts to accommodate him by transferring him to another position. (ROR #17). The defendant U.I. claims that the plaintiff was discharged because of his history of poor work performance and because there were no other positions available in the company for which the plaintiff was qualified. (ROR #18).
The Connecticut Commission on Human Rights and Opportunities investigated plaintiff's complaint pursuant to Connecticut General Statutes 46a-54(8) which authorizes the CHRO to "receive, . . . investigate and mediate discriminatory practice complaints." The procedure for such complaints is set out in Connecticut General Statutes 46a-83 et seq.
The plaintiff appeals this decision of the CHRO pursuant to Connecticut General Statutes 46a-94a, which incorporates the procedure set out in Connecticut General Statutes 4-183
(the Uniform Administrative Procedure Act).
Plaintiff has exhausted the administrative remedies available to him and is "statutorily aggrieved by the dismissal of his complaint by the commission." Connecticut General Statutes 46a-94a. See also Williams v. Commission on Civil Rights, 28 Conn. Sup. 341, 344 (1969) (a person whose complaint CT Page 3080 was dismissed for lack of reasonable cause by investigator has standing to appeal even though no hearing took place.)
In hearing an appeal of a decision by the CHRO, the court may not try the case de novo, adjudicate facts, or substitute its own discretion for that of the tribunal. Billing v. CHRO,18 Conn. App. 241, 243 (1989). The court is limited to determining whether the tribunal's findings were supported by "substantial and competent evidence" and whether the tribunal exceeded its authority. Board of Education v. CHRO, 176 Conn. 533,538 (1979).
Nevertheless, the standard of review in administrative appeals allows for judicial scrutiny of claims such as constitutional error. Finkenstein v. Administrator, 192 Conn. 104,113 (1984).
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions . . . [or] (3) made upon unlawful procedure. . . .
Connecticut General Statutes 4-183 (j).
In his brief, the plaintiff advances the following arguments: the defendant CHRO's dismissal of his complaint for insufficient evidence was in error in that the plaintiff had provided sufficient evidence to support a finding of probable cause; and the defendant CHRO violated plaintiff's constitutional right to due process by not requiring or allowing a hearing, sworn testimony, confrontation of witnesses or examination of documents prior to dismissing the complaint.
The defendant CHRO argues in its brief: the CHRO properly dismissed the plaintiff's complaint; and the procedures employed by the CHRO to investigate the plaintiff's claim satisfied the minimum requirements of due process.
The defendant U.I. in its brief argues: the decision of the CHRO was supported by substantial evidence and was not arbitrary, capricious or an abuse of discretion; the CHRO's investigatory and fact-finding procedures are constitutional and CT Page 3081 plaintiff received all the process that was due him.
In Ierardi v. CHRO, the Connecticut Appellate Court addressed the issue of what the appropriate initial burden of proof is at the investigatory phase of an employment discrimination complaint. Ierardi v. CHRO, 15 Conn. App. 569,577-83 (1988), cert., denied, 209 Conn. 813 (1988).
 General Statutes 46a-83(a) provides that after a discriminatory practice complaint is filed with the commission, it shall be assigned to an investigator whose role, among other things, is to determine "after the investigation [whether] there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint." (Emphasis added.) Only where such a finding of reasonable cause is made and the investigator cannot thereafter "eliminate the practice complained of by conference conciliation and persuasion"; General Statutes 46a-83(a); is the complaint certified and a hearing examiner appointed to conduct a formal hearing on the matter. General Statutes 46a-84.
Ierardi, supra, 578-79.
The plaintiff in Ierardi, whose age discrimination complaint had been dismissed after the investigation for lack of reasonable cause, argued that the "reasonable cause" standard equated to establishing a "prima facie case." Ierardi, supra, 578.
 Thus, under the plaintiff's argument, if an investigation discloses enough evidence, viewed without regard to any potential frailties inherent in it or without regard to the quantity or quality of contrary evidence, to justify such an inference, a finding of reasonable cause would be required and he would be entitled to an adjudicative hearing.
Ierardi, supra, 579-80.
However, the Appellate Court specifically rejected such an interpretation of "reasonable cause" and instead viewed the term as being synonymous with "probable cause." Ierardi, supra, 580. CT Page 3082
 Probable cause "`is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.'" (Emphasis added) Ledgebrook Condominium Assn. v. Lusk Corporation, 172 Conn. 577, 584, (1977), quoting Wall v. Toomey, 52 Conn. 35, 36
(1884). "Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." Three S. Development Co. v. Santore, 193 Conn. 174, 175 (1984). It deals with probabilities, and the "application of the factual and practical considerations of everyday life on which reasonable and prudent men act." State v. Wilson, [153 Conn. 39, 41 (1965)] (Footnote omitted). This is consistent with the notion "that a purpose of the statute is to guard against subjecting a respondent to a hearing upon every complaint which might be made to the commission, however unfounded." Waterbury v. Commission on Human Rights Opportunities, 160 Conn. 226, 235 (1971).
While the investigator is not to act as an adjudicative tribunal "by deciding which inferences are appropriately drawn and by resolving all material factual disputes," she does have "the authority to view all the evidence disclosed by the investigation, and to determine whether it produces a bona fide belief in the validity of the claim of discrimination which would satisfy a person of ordinary caution, prudence and judgment." Ierardi, supra, 581, n. 5.
In applying these principles by reviewing the administrative record to determine if the commission's action is supported thereby, the court is constrained by its limited scope of review. Ierardi, supra, 581-82. "The determination of factual issues is a matter within the province of the agency, and if the agency's decision is reasonably supported by the evidence in the record, it must be sustained." Ierardi, supra, 582, citing Madow v. Muzio, 176 Conn. 374, 376 (1978).
The principal evidence submitted by the plaintiff in support of his claim of discrimination is: the letter from Dr. Dolan dated January 4, 198(8) recommending the plaintiff's transfer (ROR, Item 2); the plaintiff's affidavit stating that "On or about January 6, 1988 Mr. Manniel advised me that he had CT Page 3083 reviewed Dr. Dolan's letter and the U.I. considered me a medical liability, because of hypertension, and that it could result in my being terminated." (ROR, Item 17); the plaintiff's affidavit stating that he believed other positions were available to which he could be transferred (ROR, Items 17 and 62); the plaintiff's and defendant U.I.'s statements that plaintiff was told to either resign or be terminated on January 20, 1988. (ROR, Items 17 and 18); plaintiff's affidavit stating that he was never put on "30 day's notice" or told that he would be terminated in thirty days, or by the end of January, 1988 (ROR, Item 62); and plaintiff's affidavit stating that his supervisor's criticisms of his job performance were unjustified and unfair. (ROR, Item 62).
The principal evidence submitted by the defendant U.I. in support of its claim of no discrimination is: copies of six month performance evaluations of plaintiff from January, 1985 to December, 1987 showing that plaintiff's overall performance rating went from good to satisfactory, to marginal, to satisfactory, and finally unacceptable (in December, 1987) (ROR, Item 18, Attachment #2); copies of six month performance evaluations of plaintiff indicating that plaintiff had difficulty taking orders from supervisors, required extra training; made errors at a rate greatly exceeding the error rate of other buyers; and frequently repeated the same error; and that he failed to fulfill minimal requirements of his position (ROR, Item 18, Attachment #2); six month performance evaluations of plaintiff showing that plaintiff had been warned at mid-year 1987 and end of year 1987 that if he failed to improve, his termination would be recommended (ROR, Item 18, Attachment #2); an inter-office memorandum dated September 3, 1985, from plaintiff's department head to other department heads indicating that the plaintiff would like to be reassigned to a more technical job (ROR, Item 18, Attachment #3); statement from defendant U.I. that from 1985 to the time of the plaintiff's termination in January, 1988, the plaintiff's superiors made several attempts to transfer the plaintiff to another position in the company, but the plaintiff's history of poor work performance and temper problems caused other department heads to decline the plaintiff (ROR, Item 18) the defendant U.I.'s statement that on January 7, 1988, the date Dr. Dolan's letter was received, there were no positions in the company available for which the plaintiff was qualified (ROR, Item 18); the defendant U.I.'s statement that Mr. Manniel denies that he told plaintiff he might be terminated because of his hypertension, but instead that he had explained to the plaintiff that he might be terminated because Dr. Dolan recommended that he be transferred, the company had been unsuccessful over the past few years at placing plaintiff, "and it would have been irresponsible for the Company to leave him in the Buyer's job CT Page 3084 because of the medical liability." (ROR, Item 18); and Mr. Nesdale's (plaintiff's supervisor) representations to the CHRO investigator that on December 14, 1987, the plaintiff verbally was given 30 days in which to improve, and that plaintiff's workload had been reduced in 1986 to one-third the workload of other buyers. (ROR, Item 49).
The defendant CHRO dismissed the plaintiff's complaint for lack of sufficient evidence, finding that no cause existed for crediting the plaintiff's allegations. (ROR, Item 60, p. 24) In reaching this decision, the defendant CHRO specifically found: (1) that there was no pretext for the plaintiff's termination: (2) the plaintiff was slated for termination for poor work performance by late January, 1988; (3) that no other job was available for the plaintiff; (4) that plaintiff's job performance, temper and inability to work with some personnel would have prevented him from being hired if a suitable position were available and (5) that the company had been trying for several years to assist plaintiff in transferring to another position but had been unable to place him because of the aforesaid reasons.
The defendant CHRO's finding of no reasonable cause is supported by "substantial and competent evidence." To analyze the plaintiff's constitutional claim, the court must first determine whether the plaintiff has a cognizable liberty or property interest and, if so, what process is due. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 541 (1985). The right to pursue a claim of employment discrimination through a state human rights commission is a form of property protected by the due process clause of the United States Constitution. Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982).
Due process "is flexible and calls for such procedural protections as the particular situation demands." Little v. Streater, 452 U.S. 1, 5 (1981). "Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded." Hartford Federal Savings Loan Assn. v. Tucker, 196 Conn. 172,176 (1985).
Not every claim of employment discrimination is entitled to administrative hearing; a preliminary investigation, a finding of reasonable cause and an effort at conciliation must precede a hearing. See Connecticut General Statutes 46a-83,46a-84; see also Ierardi, supra, 579.
Due process does not require that every complainant receive a hearing on the merits of every discrimination complaint. Logan, supra, 437. CT Page 3085
Research reveals no appellate level case law establishing what process is due at the preliminary investigation stage of an employment discrimination complaint. It is well settled that when an agency engages in a purely investigative function, due process does not require that "the full panoply of judicial procedures be used." Hannah v. Larche, 363 U.S. 420, 442 (1960). When acting in an administrative or fact-finding capacity, administrative agencies are empowered to act without recourse to public hearings and solely on the basis of other fact-finding techniques. Connecticut Light Power Co. v. Norwalk, 179 Conn. 111,119 (1979).
Nevertheless, the function of the CHRO in investigating employment discrimination complaints and making determinations of whether reasonable cause exists sufficient to require a full-fledged hearing are not purely "investigative" or purely "fact-finding" functions, but necessarily involve some form of adjudication of the merits of the complainant's claim. The plaintiff argues that because of this adjudicatory nature of the CHRO's preliminary investigation, due process requires that he be permitted to confront and cross-examine witnesses and that the determination of reasonable cause be made on the basis of sworn testimony only. In other words, the plaintiff maintains that he is entitled to a hearing before reasonable cause is determined.
In support of his position, the plaintiff cites Farhoud v. CHRO, 4 CSCR 221 (January 27, 1989, Berdon, J.). In that case, Judge Berdon held that a complainant at the investigatory stage "must be allowed reasonable discovery and be granted a hearing which will provide for the minimal protection of taking evidence under oath, the right to confront all witnesses and cross-examine adverse witnesses, oral argument and representation by an attorney before a fair and impartial decision-maker. (Footnote omitted)." Farhoud, supra, 223.
The defendants cite three Superior Court cases which hold that due process at the investigatory stage of a CHRO complaint does not require a hearing with an opportunity to cross-examine witnesses. Hooks v. CHRO, 2 CSCR 726 (June 22, 1987, Hammer, J.); White v. City of New London, 3 CSCR 652 (July 19, 1988, Leuba, J.); McNeil v. CHRO, D.N. 180475, J.D. of Fairfield at Bridgeport, Memorandum of Decision, October 9, 1981 (Jacobson, B., J.).
The record reveals that the plaintiff was afforded the following process: an opportunity to identify any witnesses he wished to be contacted (the plaintiff listed none) (ROR, Item 10); the opportunity to state fully the plaintiff's version of CT Page 3086 what happened (ROR, Item 17); a meeting on June 5, 1989 between the plaintiff and his attorney and the CHRO investigator to review and rebut the documentation and statements submitted by the defendant U.I. (ROR, Item 52); and an opportunity to review a draft of the investigation summary recommending dismissal, with fourteen days in which to comment on it. (ROR, Item 57) The draft summary identified the evidence gathered and the people interviewed during the investigation, consisting of 47 pieces of evidence and fourteen individuals. (ROR, Item 57)
In addition, the plaintiff had available to him the procedures established in Regulations of State Agencies 31-125-50 and 31-125-49 for taking depositions and issuing subpoenas. If the plaintiff believed there were relevant documents that had not been disclosed or statements that should have been made under oath, there were procedures available to him in the investigatory process.
The plaintiff also argues that his due process rights were violated because the investigatory findings were based, at least in part, on hearsay evidence. Nevertheless, it is well-settled that hearsay evidence is generally admissible in administrative proceedings, even formal administrative hearings, so long as it is trustworthy. See Altholtz v. Dental Commission, 4 Conn. App. 307,312-13 (1985).
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1949). Administrative decision-making without a hearing is constitutionally validated by providing an aggrieved party with a subsequent opportunity for judicial review of the agency's decision. Connecticut Light Power Co. v. Norwalk, 179 Conn. 111,119 (1979).
Determining what process is due in a given situation involves considering three distinct factors:
 first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural CT Page 3087 requirement would add.
Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976).
The procedures available to the plaintiff at the investigatory stage of this administrative proceeding satisfied the fundamental requirements of due process. As the Appellate Court noted in Altholtz, "(t)he procedure used in this case (involving suspension of a dental license) sufficiently ensured the plaintiffs' constitutional right of due process. If our legislature wishes to provide further procedural safeguards to fortify those already in effect, it may do so. This is not a matter for judicial determination." Altholtz, supra, 313.
Accordingly, the plaintiff's appeal is dismissed.
STUART M. SCHIMELMAN, JUDGE