John R. DE MALHERBE, Plaintiff,

v.

INTERNATIONAL UNION OF ELEVA-
TOR CONSTRUCTORS, International
Union of Elevator Constructors Local
No. 8, National Elevator Industry, Inc.,
Defendants.

No. C–76–1668–CBR.

United States District Court,
N. D. California.

April 12, 1978.

See also D.C., 438 F.Supp. 1121.

Dennis John Woodruff, David R. Lipson, Kutsko, Moran & Mullin, San Francisco, Cal., for plaintiff.

Brundage, Beeson & Pappy, Stephen H. Naiman, Richard J. Davis, Jr., Los Angeles, Cal., O'Donoghue & O'Donoghue, Patrick C. O'Donoghue, Joyce A. Mader, Washington, D. C., for defendants IUEC and IUEC Local No. 8.

Voltz, Cook & Orenstein, Charles E. Voltz, Morton H. Orenstein, San Francisco, Cal., Putney, Twombly, Hall & Hirson, Charles O. Strahley, New York City, for defendants National Elevator Industry, Inc.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Defendants' motions to dismiss require the Court to decide whether plaintiff's im-

plied cause of action for damages under the Constitution is barred by the applicable statute of limitations.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The factual and procedural background of this action is described in detail in the Court's earlier Memorandum of Opinion filed herein on September 28, 1977 (438 F.Supp. 1121 (N.D.Cal.1977)). Plaintiff claims that defendants deprived him of employment opportunities because he is an alien. His claim under 42 U.S.C. § 1981 dismissed and his claims under 42 U.S.C. § 1985 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, abandoned, plaintiff now relies solely on the legal theory that defendants' conduct constituted federal action for the purposes of the Fifth Amendment and that discrimination against aliens by this federal instrumentality is illegal under the Due Process Clause of the Fifth Amendment.

The alleged discrimination against plaintiff occurred on March 26, 1974. Almost two and a half years later, on August 9, 1976, plaintiff filed his original complaint, which relied exclusively on Title VII and § 1985. Another eight months passed until plaintiff filed his first amended complaint on March 4, 1977, which rested on 42 U.S.C. § 1981. Finally, on June 20, 1977, more than three years after defendants allegedly discriminated against him, plaintiff amended his complaint to allege for the first time that his rights under the Fifth Amendment had been violated.

Defendants filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on a variety of grounds: (1) that plaintiff failed to join indispensable parties, the United States Department of Labor and the Elevator Industry National Recruitment and Training Program (EINRTP); (2) that defendants have the institutional authority to discriminate against aliens under the standards of *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), *on remand*, 435 F.Supp. 37 (N.D.Cal.1977), and

that their conduct toward plaintiff "substantially advanced", *id.*, 435 F.Supp. at 44, or was rationally related to the federal interests at stake; and (3) that plaintiff's action is barred by the statute of limitations. The Court postponed argument and decision on the first two of those contentions because of its preliminary tentative view that the statute of limitations issue was most likely to be dispositive. Based on its consideration of the arguments of counsel, and on its own research and analysis, the Court has decided to deny defendants' motions to dismiss on statute of limitations grounds.

## II. *GENERAL PRINCIPLES*

### A. *Federal Actions without Limitations Provisions*

Congress has not adopted a statute of limitations for implied causes of actions for damages under the Constitution, which were first recognized by the Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). When Congress fails to create a federal statute of limitations for federal causes of action, courts generally apply the statute of limitations of the most analogous cause of action under the law of the state in which the federal cause of action arises. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1971) (§ 1981 actions); *Beard v. Robinson*, 563 F.2d 331, 334 (7 Cir. 1977) (*Bivens* actions); *Regan v. Sullivan*, 557 F.2d 300, 303 (2 Cir. 1977) (*Bivens* actions). An exception to this general rule is made when the borrowing of an otherwise applicable state statute of limitations "would be inconsistent with the underlying policies of the federal statute." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). "A special federal statute of limitations is created, as a matter of federal common law, only when the need for uniformity is particularly great or when the nature of the federal right demands a particular sort of statute of limitations." *Chevron Oil Co. v. Huson*,

404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1971). An alternative to fashioning a new common-law federal statute of limitations is to apply a federal statute of limitations for an analogous or closely related federal cause of action. *See McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (federal statute of limitations for Jones Act suits also applies to unseaworthiness suits).

■ Courts have a degree of freedom not only to decide whether to borrow a state statute of limitations but also to decide which of several analogous statute statutes should be borrowed. The "characterization of this action for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law." *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *Shaw v. McCorkle*, 537 F.2d 1289, 1292–1293 & n. 5 (5 Cir. 1976); *Smith v. Cremins*, 308 F.2d 187, 189 (9 Cir. 1962); *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 83 (2 Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). The "question of which local limitations period is appropriate calls for a consideration of the objectives of the substantive federal statute and how they can best be achieved." *Douglass v. Glenn E. Hinton Investments, Inc.*, 440 F.2d 912, 915 (9 Cir. 1971). In cases where the federal court "must choose among the several state statutes," it should "apply the one which best effectuates the federal policy at issue." *Charney v. Thomas*, 372 F.2d 97, 100 (6 Cir. 1967); *Peterson v. Fink*, 515 F.2d 815, 816 & n. 3 (8 Cir. 1975).

■ Federal courts do not have unlimited freedom to pick and choose among analogous state statutes. They should adopt the characterization of the action that the state would use to select an appropriate statute of limitation, "unless that characterization is unreasonable or otherwise inconsistent with [federal] policy." *Auto Workers v. Hoosier Cardinal Corp.*, *supra*, 383 U.S. at 706, 86 S.Ct. at 1113. Not only is the federal court's determination of "the nature of the right conferred by the federal statute" circumscribed, but "the federal court accepts the state's interpretation of its own statutes of limitations * * *." *Smith v. Cremins, supra*, 308 F.2d at 189 (footnote omitted); Note, Federal Statutes Without Limitations Provisions, 53 Colum.L.Rev. 68, 71 (1953).

■ The selection of an appropriate state statute of limitations involves both state and federal questions. The state statute must meet two criteria: (1) it must apply to analogous state causes of action, a predominantly state law question, and (2) its application must be consistent with the federal policies of the federal cause of action, a federal question. If a federal court can find no state statute which is both applicable to analogous state actions and consistent with federal policies, it must create a new federal statute of limitations.

## B. *Limitations Periods for Bivens Actions*

■ In considering the first criterion for borrowing—the comparability of the federal cause of action with the state cause of action to which the state statute of limitations applies—the Court must recognize the unique characteristics of a constitutional cause of action. There are "fundamental differences between a civil rights action and a common law tort," *Beard v. Robinson, supra*, 563 F.2d at 336; *see Briley v. State of California*, 564 F.2d 849, 854 n. 4 (9 Cir. 1977); and indeed the substantiality of those differences led the Supreme Court to infer a right of action for damages from the Constitution despite the availability of common law remedies. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra*, 403 U.S. at 392–395, 91 S.Ct. 1999. Like 42 U.S.C. § 1983 which derives from it, the Constitution "clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute." *Smith v. Cremins, supra*, 308 F.2d at 190.

■ Nevertheless, it is important to remember that the prerequisite for borrowing a state statute of limitations is not that

the state causes of action to which it applies are identical to the federal cause of action. Borrowing requires only that the state and federal causes of action are analogous. Some differences between state and federal causes of action are virtually inevitable, and they may be completely irrelevant to the considerations affecting the selection of a limitations period. Despite differences between state and federal constitutional rights, "the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right." *Carey v. Piphus,* —— U.S. ——, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978). That is unquestionably true of some constitutional torts, and it may even be that "[m]any if not most constitutional torts have analogies in the common law." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S.App.D.C. 397, 410, 566 F.2d 289, 302 & n. 16 (1977) (Robinson, J., concurring). The mere fact that some *Bivens* actions differ in certain ways from state actions does not preclude the borrowing of state limitations periods applicable to them. If the similarities outweigh the differences and if the federal interest in borrowing a particular state statute of limitations is substantial, that provision can be borrowed despite the less than perfect fit.

 The second criterion for borrowing a state statute of limitations for *Bivens* actions—the requirement that its application be consistent with the policies underlying the action—involves a different set of factors. The first factor is that the United States has an interest in a time period that is "sufficiently generous * * * to preserve the remedial spirit of federal civil rights actions." *Shouse v. Pierce County,* 559 F.2d 1142, 1146 (9 Cir. 1977) (footnote omitted). Some causes of action have a relatively long limitations period because the law favors the kind of people who prosecute them, see Developments, Statutes of Limitations, 63 Harv.L.Rev. 1177, 1185–1186 (1950), and victims of constitutional torts fall into this category. *See, e. g., Beard v. Robinson, supra,* 563 F.2d at 337, *quoting Monroe v. Pape,* 365 U.S. 167, 194,

81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring); *Shouse v. Pierce County, supra,* 559 F.2d at 1146 n. 6; *Almond v. Kent,* 459 F.2d 200, 204 (4 Cir. 1972); *Smith v. Cremins, supra,* 308 F.2d at 190. Faced with a choice between two state statutes for state causes of action each roughly analogous to *Bivens* actions, a court should choose the longer. In other words, in this area, a court should broadly construe the principle that if a substantial question exists about which of two conflicting statutes of limitations to apply, the court should apply the longer as a matter of policy. *See Guam Scottish Rite Bodies v. Flores,* 486 F.2d 748, 750 (9 Cir. 1973).

 Balanced against this federal interest in a generous limitations period is the no less important federal interest in protecting agencies and instrumentalities of the federal government from stale claims. Statutes of limitations are designed to protect potential defendants from defending claims after "evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); Developments, Statutes of Limitations, 63 Harv.L. Rev. 1177, 1185 (1950). It is not enough to decide that *Bivens* actions have a remedial spirit which requires a generous limitations period. The question is how long a statute is generous enough to carry out that spirit without excessively injuring the legitimate interests of alleged constitutional tortfeasors.

 The importance of a long statute of limitations for *Bivens* actions can be exaggerated. In considering how the limitations provision for civil rights actions under 42 U.S.C. § 1981 can be tolled, the Supreme Court took the trouble to

"note expressly how little is at stake here. We are not really concerned with the broad question whether these [employers] can be compelled to conform their practices to the nationally mandated policy of equal employment opportunity. If the [employers], or any of them, pres-

ently are actually engaged in such conduct, there necessarily will be [employees] who are in a position now [to sue]. The question in this case is only whether this particular [employee] has waited so long that he has forfeited his right to assert his [civil rights] claim in federal court." *Johnson v. Railway Express Agency, Inc., supra*, 421 U.S. at 467 n. 13, 95 S.Ct. at 1723.

That does not imply in any way that federal constitutional rights are relatively unimportant. The acknowledged importance of federal constitutional rights does affect the selection of a statute of limitations for constitutional tort actions, but the interest in the successful prosecution of the meritorious actions should not obscure the interest in the protection of defendants from stale claims.

■ A second federal interest in selecting a statute of limitations for *Bivens* actions is the interest in uniformity. It is impossible to achieve complete uniformity because it is sought along three incompatible dimensions:

> "nationwide uniformity among federal courts for all *Bivens* actions; uniformity as between treatment of this right and of its analogue, the Civil Rights Act; [and] uniformity as between treatment of this federal right and of State rights of a related conceptual character." *Regan v. Sullivan*, 417 F.Supp. 399, 402 (E.D.N.Y. 1976), *rev'd on other grounds*, 557 F.2d 300 (2 Cir. 1977).

National uniformity for *Bivens* actions is already unattainable. *Compare Beard v. Robinson, supra*, 563 F.2d at 338 (five-year statute), *with Regan v. Sullivan, supra*, 557 F.2d at 307 (three- or six-year statute). Uniformity between *Bivens* and § 1983 actions within a state is possible, and there is an interest in making the two actions "roughly analogous." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339, 1346–1347 (2 Cir. 1972). Adopting different limitations periods "could lead to the incongruous application of inconsistent limitations periods to different members of a single conspiracy,

based solely on whether [a law enforcement] officer alleged to have committed the constitutional violation was employed by the state or federal government." *Beard v. Sullivan, supra*, 563 F.2d at 338. Similarly, in cases where both state and federal governments are in a symbiotic relationship with a nominally private entity, *cf. Ginn v. Mathews*, 533 F.2d 477, 480 & n. 4 (9 Cir. 1976), a plaintiff should not have more or less time to sue the entity under 42 U.S.C. § 1983 to the extent its action is state action than it has to sue the entity under the Fifth Amendment to the extent its action is federal action. Of course, the third axis of uniformity, uniformity with state rights of related conceptual character, is a necessary condition of borrowing a state statute of limitations.

■ Finally, a court must seek a statute of limitations that minimizes procedural complexity and uncertainty in *Bivens* actions. The Due Process Clause of the Fifth Amendment, the basis of plaintiff's claim in this case, protects a wide variety of rights, and other federal constitutional provisions protect other rights that are equally diverse. The rationale of *Smith v. Cremins, supra*, 308 F.2d at 190, in rejecting the proliferation of § 1983 statutes of limitations applies with equal force to the case of *Bivens* actions:

> "Inconsistency and confusion would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several differing periods of limitation applicable to each state-created right were applied to the single federal cause of action."

The discussion in *Regan v. Sullivan, supra*, 557 F.2d at 305–307, concerning statutes of limitations for different types of law enforcement officers illustrates how difficult these choices can be, and this case offers its own example, *see* p. 1345, *infra*. In analyzing the tolling of the statute of limitations in Tucker Act cases seeking just compensation for taking by the United States, the Supreme Court insisted that "procedural rigidities should be avoided * * * [w]hen

dealing with a problem which arises under such diverse circumstances." *United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). The same principle applies here. See Note, Statutes of Limitations in Federal Civil Rights Litigation, 1976 Ariz.St.L.J. 97, 113 (1977) (policies of stability and certainty most important).

■ Important as this factor is, the federal Constitution does not require the same statute of limitations for all *Bivens* actions. "[I]t is well-settled that a § 1983 complaint may contain more than one cause of action and thus may require the borrowing and application of more than one state statute of limitations." *Williams v. Walsh*, 558 F.2d 667, 670 (2 Cir. 1977) (citing cases). The variety of constitutional torts makes it somewhat surprising that the same limitations provision would or should apply to every type of *Bivens* action. Factors unique to one type may require a different (and not necessarily shorter) statute of limitations than that appropriate for other types. The federal interest in certainty does not necessarily prevail over other federal interests, including the selection of a state statute of limitations tailored to the nature of the particular federal cause of action.

## III. *ANALOGOUS STATE STATUTES OF LIMITATIONS*

■ Although *Regan v. Sullivan, supra*, 557 F.2d at 303, characterized it as a "threshold question," the decision whether to formulate or adopt a special federal period of limitations can be made only after a canvass of state limitations provisions to determine whether any is both applicable to analogous state causes of action and consistent with the relevant federal policies. The Court need not make an exception to the general rule of borrowing a state statute, *see Johnson v. Railway Express Agency, Inc., supra*, 421 U.S. at 462, 95 S.Ct. 1716 (state statute "ordinarily" controls), until it finds a reason for rejecting the general rule in the circumstances of the case.

The parties have suggested the applicability of five state statutes of limitations: Cal.Code Civ.Proc. § 340(3); Cal.Lab.Code §§ 1197.5 and 1422; Cal.Code Civ.Proc. §§ 338(1) and 343.

### A. *California Code of Civil Procedure § 340(3)*

Section 340(3) of the California Code of Civil Procedure provides that "[a]n action * * * for injury to * * * one caused by the wrongful act * * * of another" must be brought within one year.

Defendants argue that § 340(3) "is directed to actions which seek redress for injury to the person, regardless of the nature of the underlying legal obligation alleged to have been violated." In support of their argument, defendants rely on a number of California cases which suggest that the nature of the injury to the plaintiff and not the nature of the liability determines whether § 340(3) applies. *E. g., Edwards v. Fresno Community Hospital*, 38 Cal.App.3d 702, 113 Cal.Rptr. 579, 580 (1974); *Rubino v. Utah Canning Co.*, 123 Cal.App.2d 18, 266 P.2d 163, 168 (1954).

■ In *McDowell v. Union Mutual Life Ins. Co.*, 404 F.Supp. 136, 143 (C.D.Cal.1975), the court considered whether various California cases, including those cited by plaintiff,

"truly stand for the rule that all personal injuries fall under that section or whether they instead stand for the notion that the gravamen of those actions is in tort. In other words, is § 340(3) a personal injury statute of limitations or a tort-personal injury statute of limitations?"

After reviewing the leading Supreme Court and District Court of Appeal cases, the court concluded that "though the issue is far from clear cut, * * * the applicability of § 340(3) turns on the question of whether or not the tort character of the action is considered to prevail." *Id.*, at 144; Note, 43 Cal.L.Rev. 546, 550–551 & nn. 31–34 (1955) (*McDowell* approach supported by legislative history of § 340(3)); *see* Developments, Statutes of Limitations, 63 Harv.L. Rev. 1144, 1193 (1950) (as in California,

"[I]n most states the personal-injury limitation apparently was not intended to encompass any actions other than those which 'sound in tort' "). In other words, the applicability of § 340(3) depends on the nature of the liability as well as the nature of the injury. Section 340(3) does not cover actions for recovery for personal injuries which are not based in tort, and *Bivens* actions differ to some extent from common law tort actions. *See* p. 1340, *supra.*

■ This conclusion is not changed by the application of § 340(3) to some statutory causes of action. "Some statutes imposing individual liability are merely in affirmation of the common law, while others impose an individual liability other than that at common law." *McClaine v. Rankin,* 197 U.S. 154, 161, 25 S.Ct. 410, 412, 49 L.Ed. 702 (1905); *cf. Fratt v. Robinson,* 203 F.2d 627, 635 (9 Cir. 1953). Where statutes codify common-law tort liabilities or modify them without changing their basic character, § 340(3) applies. For example, when a statute extends a duty of care based in tort to a party not obligated at common law or imposes a tort liability on a party not liable at common law, the victim must sue within one year as § 340(3) requires because the "cause of action is strictly and solely one in tort * * *." *Franceschi v. Scott,* 7 Cal. App.2d 494, 495, 46 P.2d 764, 764 (1935) (negligence of driver of car imputed by statute to owner). The same principle applies when a statute makes a tortfeasor liable to a party who could not recover at common law. Accordingly, an employer or its insurance carrier must sue a third-party tortfeasor who injured an employee within the one-year period established by § 340(3)

because the employee's claim, by whomever prosecuted, "is solely one in tort for personal injuries." *Aetna Casualty & Surety Co. v. Pacific Gas & Electric Co.,* 41 Cal.2d 785, 264 P.2d 5, 6 (1953).[1] In these cases, the common law origins of the right were critical. Because constitutional rights are different from common law rights, the former are not "wrongful acts" within the meaning of § 340(3).

Linking § 340(3) to causes of action sounding in tort is consistent with the California courts' interpretation of Cal.Code Civ.Proc. § 338(1), which provides for a three-year statute of limitations for liabilities created by statute, *see* p. 1350, *infra.*

"The California courts have held that an action is based 'upon a liability created by statute,' within the meaning of Section 338(1), if the liability would not exist but for statute. Or, conversely, an action is not based 'upon a liability created by statute' if the right is one which would exist at common law in the absence of statute." *Smith v. Cremins, supra,* 308 F.2d at 189–190 (footnote omitted).

*See* Developments, Statutes of Limitations, 63 Harv.L.Rev. 1177, 1196–1197 (1950) ("catch-all provision [like § 338(1)] is not applied if the liability existed in any form at common law"). When a codified right which would exist at common law in the absence of a statute is violated, some statute of limitations like § 340(3) is activated. But if common law did not recognize the right created by statute, not § 340(3) or some other provision but § 338(1) applies.

In rejecting the applicability of § 340(3), the Court recognizes that California courts used to apply[2] a statute of limitations deal-

---

1. Significantly, in neither *Aetna Casualty* nor *Franceschi* did the California courts apply § 340(3) mechanically. In the first case, the court noted that it made no sense to increase the exposure of the tortfeasor from one to three years simply because the identity of the plaintiff changed. 264 P.2d at 7. In *Franceschi,* the court refused to expose to suit for three years a car owner who was liable only through imputed negligence while the driver who was in fact negligent could not be sued more than one year after the accident. 46 P.2d at 765. This sensitivity of California courts to the inter-

ests of the parties make it appropriate for federal courts to take into account the interests of the parties and of the United States in choosing a statute of limitations for *Bivens* actions.

2. Since the enactment of the California Tort Claims Act, its one-year statute of limitations, Cal.Govt.Code §§ 905 and 911.2, applies. *San Filippo v. County of Santa Cruz,* 415 F.Supp. 1340, 1342–1343 (N.D.Cal.1976) (suit for compensation for taking under California and federal constitutions). Defendants do not argue that this statute of limitations applies, nor could they in light of the Court of Appeals'

ing with injuries to property or with trespass to cases that involved taking of private property by public entities in the exercise of their power of eminent domain and that arose under the state and federal constitutions. *See, e. g., Ocean Shore R.R. Co. v. City of Santa Cruz*, 198 Cal.App. 267, 17 Cal.Rptr. 892, 894–895 (1962) (either trespass or adverse possession provision applies). There is, however, a critical difference between those statutes of limitations applied in constitutional taking cases and § 340(3). The former provisions apply to actions involving a certain type of injury regardless of the nature of the liability. The applicability of § 340(3), in contrast, depends on the nature of the liability as well as the nature of the injury, and as discussed previously, *see* pp. 1343–1344, *supra*, § 340(3) applies only where the cause of action sounds primarily in tort. If a special statute of limitations were available for constitutional violations involving personal rights, California law might require this Court to adopt that statute. But because § 340(3) as interpreted by California courts does not apply, resort to some special statute of limitations is not possible.

Characterized according to state law, *Bivens* actions do not fit into § 340(3) because they do not have common-law tort origins. The inappropriateness of borrowing § 340(3) for *Bivens* actions if further buttressed because its application would tend to frustrate the federal interests discussed at pp. 1341–1343, *supra*. Its one-year statute of limitations is relatively short, and it differs significantly from the three-year period in which § 1983 actions can be brought in California. *See Donovan v. Reinbold, supra*, 433 F.2d 738 (three years for § 1983 actions); *Smith v. Cremins, supra*, 308 F.2d 187 (same). Use of statutes of limitations like § 340(3) requires courts to engage in a case-by-case determination of

the applicable statute. If the constitutional right violated was not analogous to a personal right, § 340(3) would not apply. The difficulty of determining whether a constitutional right is personal or not within the meaning of § 340(3) is demonstrated by this case. Cases like *Edwards v. Fresno Community Hospital, supra*, 113 Cal.Rptr. at 580–582 (doctor's hospital privileges are property right directly related to pursuit of livelihood), suggest that wrongful interference with an employment or occupational interest violates a property or business rather than a personal right. If so, preventing plaintiff from working in the elevator construction industry, especially after he had been placed on the hiring list, may have violated a property right of plaintiff which implicates some statute of limitations other than § 340(3). *See* Note, Statutes of Limitations in Federal Civil Rights Litigation, 1976 Ariz.St.L.J. 97, 116–119 (1977) (discussion of uncertainty created by reliance on tort analogies).

Most courts of appeals have chosen a general statute of limitations for § 1983 actions instead of looking to statutes of limitations for various tort actions. *See* cases cited in *Beard v. Robinson, supra*, 563 F.2d at 337 n. 7, and in *Reed v. Hutto*, 486 F.2d 534, 537 n. 2 (8 Cir. 1973). The Court of Appeals for the Ninth Circuit has been at least as committed to that approach as any other, *see, e. g., Smith v. Cremins, supra*, 308 F.2d 187, and the adoption of § 340(3) for *Bivens* actions would be inconsistent with the clear thrust of those decisions. The federal interest in a different limitations provision and the differences between constitutional rights and the kind of common-law tort rights within the scope of § 340(3) make that section an inappropriate statute of limitations for *Bivens* actions.

rejection in § 1983 actions of claims-type limitations which are "imposed to require notice and filing of claims against public officers and municipal governments as conditions precedent to filing suit." *Shouse v. Pierce County, supra*, 559 F.2d at 1146 & n. 7; *Donovan v. Reinbold*, 433 F.2d 738, 741–742 (9 Cir. 1970) (California Tort Claims Act). The legislative overruling of

cases applying the trespass and other statutes of limitations to taking cases does not of course necessarily mean that the limitations period for the roughly analogous tort underlying a constitutional violation should not be applied in the absence of a statute specifically governing suits for the redress of constitutional torts.

## B. *California Labor Code § 1422*

 Section 1422 of the California Labor Code establishes a one-year statute of limitations for the filing of employment discrimination claims before the Fair Employment Practices Commission (FEPC), the California counterpart of the federal Equal Employment Opportunity Commission (EEOC). Under the Fair Employment Practices Act (FEPA), Cal.Lab.Code §§ 1411–1432, an individual who thinks he has been injured by an unlawful employment practice has a year to file a complaint with the FEPC, which must then investigate the charge and may then in its discretion hold a hearing and perhaps issue a remedial order. Cal.Lab.Code §§ 1420–1426. In addition to its adjudicatory function, the FEPC has an important conciliatory function which it must pursue before initiating coercive measures. Cal.Lab.Code § 1421; Tobriner, The California Fair Employment Practices Commission—The Frustration of Potential, 10 U.S.F.L.Rev. 37, 45–48 (1975) (FEPC in fact places emphasis on voluntary compliance). A court can review the FEPC's action only to determine whether it is supported by substantial evidence, and a party cannot obtain a judicial trial de novo of matters within the jurisdiction of the Commission. *Mahdavi v. FEPC*, 67 Cal. App.3d 326, 136 Cal.Rptr. 421, 428 (1977); *Northern Inyo Hospital v. FEPC*, 38 Cal. App.3d 14, 112 Cal.Rptr. 872, 876–878 (1974).

 Courts have consistently refused to use in civil rights cases statutes of limitations designed for administrative claims because "[d]ifferent considerations obviously apply to suits by private litigants in courts of law." *Waters v. Wisconsin Steel Works of Int'l. Harvester Co.*, 427 F.2d 476, 488 (7 Cir. 1970); *Chambers v. Omaha Public School District*, 536 F.2d 222, 225–226 (8 Cir. 1976); Mason v. Owens-Illinois, Inc., *517 F.2d 520, 522 (6 Cir. 1975);* Jones v. United Gas Improvement Corp., *383 F.Supp. 420, 429–430 (E.D.Pa.1974);* Smith v. Perkin-Elmer Corp., *373 F.Supp. 930, 936 (D.Conn. 1973). There are several explanations for this unanimous conclusion.*

One reason why statutes of limitation for administrative claims may tend to be shorter than those for judicial claims involving the same substantive elements is that the procedures for the former are generally more simple and present less need for the assistance of a lawyer. *Smith v. Perkin-Elmer Corp., supra*, 373 F.Supp. at 936. It is, however, easy to exaggerate the additional time necessary to draft a complaint and locate a lawyer in judicial proceedings. The loose standards of notice pleading under the Federal Rules of Civil Procedure, which are applied especially liberally to pro se plaintiffs, *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), enable both laypeople and lawyers to file lawsuits without much delay. The right of a prevailing plaintiff to recover attorneys' fees in civil rights cases, 42 U.S.C. § 1988, makes it substantially easier to find a lawyer, and delay in obtaining counsel tends to reflect the weakness of a case. Furthermore, the pleading requirements of the FEPC are not that simple and require that the complainant "set forth the particulars" of the alleged unlawful employment practice. Cal.Lab.Code § 1422. Given the complexity of many administrative regulations and the difficulty of dealing with an overburdened government bureaucracy, assistance of counsel in administrative proceedings is no luxury, and the California legislature may have allocated a significant portion of the limitations period in § 1422 for finding a lawyer, just as it doubtless did in limitations provisions for judicial claims.

A second reason for a generally longer statute of limitations in judicial proceedings is that in FEPC cases as in EEOC cases, "*after* the charge is filed, it is the *agency* that carries both the burden and initiative of investigation." *Smith v. Perkin-Elmer Corp., supra*, 373 F.Supp. at 936 (emphasis in original). In contrast, "[i]n seeking the judicial remedies * * * the *plaintiff* must build his own case, generally *prior* to commencement of the action." *Ibid.* (emphasis in original). Presumably limitations periods for judicial claims are therefore greater than those for administrative

claims in order to allow more time for investigation before filing.

It is not clear why this increase would be great. The amount of investigation in employment discrimination cases that can be accomplished informally before filing is often rather limited. Unless required by the discovery provisions of the Federal Rules of Civil Procedure, employers are usually unwilling to provide employees with the detailed statistical information about employment practices on which plaintiffs rely in employment discrimination cases and which takes so long to collect and to analyze. Plaintiffs must file suit in order to gain access to that information. Furthermore, the administrative overloading of the FEPC, which has created a substantial backlog of cases, see Tobriner, The California Fair Employment Practices Commission—The Frustration of Potential, 10 U.S. F.L.Rev. 37, 50, 51–53 (1975), means that employees who can make a strong showing to agency staff of discrimination based on their own investigation are more likely to trigger a rapid and thorough investigation than employees who come to the agency with nothing. Section 1422 is a relatively long statute of limitations for administrative claims of employment discrimination, *compare* § 1422 (one year) *with* 42 U.S.C. § 2000e–5(e) (180 days for the EEOC) *with* 43 Pa.Stat. § 959 (90 days), so it probably contemplates that a complainant will conduct significant investigation before filing.

A third reason why legislatures may create longer statutes of limitations for judicial than administrative claims is to provide an opportunity for negotiation before the hardening of adversary positions. "[T]he filing of a law suit alters in a very significant way the posture of the parties and their ability to reach an informal settlement." *Budreck v. Crocker National Bank,* 407 F.Supp. 635, 644 (N.D.Cal.1976). Whereas the filing of a lawsuit reflects the failure of negotiation and makes settlement less likely, an administrative proceeding with the FEPC represents, at least in theory (*see* p. 1346, *supra*), the continuation of negotiation with the help of a professional mediator. The legislature presumably did not want to force plaintiffs to file suit in court without a reasonable opportunity to resolve their disputes informally. On the other hand, a legislature would not want a complainant to resort to the administrative process without first exhausting other settlement possibilities, especially in light of the backlog of administrative complaints, and the creation of a relatively long limitations provision for FEPC claims suggests that the California legislature had these concerns in mind when it enacted § 1422.

When all these factors are weighed, it seems likely that the differences between administrative claims and judicial claims make it appropriate to have a shorter statute of limitations for the former than for the latter, although it is not clear how much shorter. Along with the federal courts that have rejected analogies between administrative and judicial limitations provisions (*see* p. 1346, *supra*), California appears to distinguish them. An individual with an equal pay claim involving sex discrimination has one year to file a complaint with the FEPC but two years to file suit in court, Cal.Lab.Code § 1197.5. The Court must assume that this different treatment of substantively identical claims has some reasonable purpose, especially in light of the amendment of the limitations provision in § 1197.5 in 1976 after the FEPA with its one-year provision was enacted. California does not apply the same statute of limitations to administrative suits involving employment discrimination as it does to otherwise identical judicial suits, and that approach, coupled with the uniform adoption of the same approach by federal courts, compels this Court to do the same.

### C. *California Labor Code § 1197.5*

An employee who is discriminated against in terms of wages because of sex has a statutory cause of action against his or her employer under California law, and he or she must file suit "no later than two years after the cause of action occurs [*sic*]." Cal.Lab.Code § 1197.5(h).

For several reasons, this statute of limitations seems to be the one to apply to this *Bivens* action. Although § 1197.5 applies only to equal pay claims and although plaintiff's claim does not involve discrimination in wages, it nevertheless seems appropriate to apply the same limitations provision to all types of employment discrimination claims, including hiring, pay, promotion, benefits, discipline, and firing claims. The fact that one statute of limitations, Cal.Lab. Code § 1422, applies to all types of employment discrimination claims before the FEPC including equal pay claims suggests that the factors supporting a longer statute of limitations for one type of claim are roughly balanced by factors indicating that a shorter limitations period is appropriate. For statute of limitations purposes, employment discrimination claims involving equal pay seem analogous to other types of claims.

Another difference between actions covered by § 1197.5 and *Bivens* actions is that the former are limited to sex discrimination. But the creation of a special statutory remedy for the victims of a particular type of discrimination suggests that those victims are more favored by the legislature and therefore probably have a longer and not a shorter limitations provision. Although sex discrimination is prohibited along with racial and other kinds of discrimination by the FEPA, Cal.Lab.Code § 1420(a), and although the FEPC has jurisdiction over claims involving sex discrimination, the victims of sex discrimination involving equal pay can bring suit under § 1197.5 without first exhausting administrative remedies. *Bass v. Great Western Savings & Loan Ass'n.*, 58 Cal.App.3d 770, 130 Cal.Rptr. 123 (1976). Thus victims of this kind of discrimination have two remedies instead of the one available to victims of other types of discrimination, and more favored classes of plaintiffs generally have more time to file suit. *See* Developments, Statutes of Limitations, 63 Harv.L.Rev. 1177, 1185–1186 (1950). One California court has suggested that like Title VII, the FEPA does not prohibit alienage discrimination, *Mahdavi v. FEPC, supra*, 136 Cal.

Rptr. at 425–426, 428–429; *see Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973) (Title VII), so aliens are if anything a less favored class than the victims of sex discrimination. Under the circumstances, it seems unlikely that California law gives aliens longer to sue then the victims of sex discrimination, and § 1197.5 may place an upper limit on the statute of limitations for employment discrimination suits.

Furthermore, as the discussion in the preceding section demonstrated (*see* pp.1346–1348, *supra*), a statute of limitations for judicial claims need not be a great deal longer than a limitations provision for administrative claims. A state which provides a very short statute of limitations for administrative claims may provide a much longer one for judicial claims, *see, e. g., Waters v. Wisconsin Steel Works of Int'l. Harvester Co., supra*, 426 F.2d at 488 (120 days for administrative claim vs. five years for judicial claim in Illinois), but the fact that California has provided a relatively generous one-year statute of limitations for administrative claims makes it unlikely that it would give more than twice as much time for the preparation of judicial claims. California apparently intended a relatively short statute of limitations for employment discrimination cases, whether initiated in a court or an administrative agency.

Nevertheless, these arguments amount only to a prediction that if the California legislature considered the issue, it would create a statute of limitations of no more than two years for all judicial employment discrimination claims. The fact remains that the California legislature has not directly addressed this problem and that it has not permitted all victims of employment discrimination to sue in court without first exhausting administrative remedies. In the absence of such legislation, it is difficult to analogize a lawsuit claiming that an employer fired an employee because of his alienage with a lawsuit that an employer paid an employee less because of his sex. Federal courts can extrapolate the principles behind a statute of limitations to

a degree, but they cannot transform a statute of limitations for a particular kind of lawsuit into a general one for all related lawsuits. Cal.Code Civ.Proc. § 338(1), a three-year limitations provision, seems as appropriate as § 1197.5 (see pp. 1350–1351, infra), and when two statutes of limitations arguably apply to a federal cause of action, federal policy requires that the longer be borrowed. See pp. 1341–1342, supra.

The Court emphasizes that it does not reject § 1197.5 because a two-year statute of limitations is insufficiently generous "to preserve the remedial spirit of federal civil rights actions." Shouse v. Pierce County, supra, 559 F.2d at 1146. Two years provides ample opportunity to exhaust avenues of investigation and opportunities for settlement before filing suit. In fact, some federal courts have adopted a one-year statute for federal civil rights actions. See, e. g., Johnson v. Railway Express Agency, Inc., 489 F.2d 525, 529 (6 Cir. 1973), aff'd on other grounds, 421 U.S. 454, 462 & n. 7, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

Not only does the prospective plaintiff have little need for a longer limitations period, but his employer has a substantial interest in a short one. The type of evidence involved in employment discrimination cases is often impermanent. Written evaluations of employees, if maintained, often only summarize impressions of supervisors, and supervisors, whose rate of turnover can be substantial, often are called on to testify in court about their attitudes toward an employee and the specific circumstances which shaped those attitudes. The reality of the danger in this type of case that memories fade and witnesses became unavailable, cf. Order of R.R. Telegraphers v. Railway Express Agency, Inc., supra, 321 U.S. at 349, 64 S.Ct. 531, makes a shorter statute of limitations proper. Furthermore, unresolved suspicions of employment discrimination can poison the atmosphere of the workplace if allowed to linger, so their quick resolution is especially important. Cf. Smith v. Perkin-Elmer Corp., supra, 373 F.Supp. at 936.

Borrowing § 1197.5 as the statute of limitations for Bivens actions involving employment discrimination would not undermine the goal of uniformity with § 1983 actions. See pp. 1342–1343, supra. If § 1197.5 applies to Bivens actions involving employment discrimination, it also applies by the same reasoning to § 1983 actions involving employment discrimination, so the same statute of limitations would apply to all claims in a lawsuit involving employment discrimination by both the state and federal government.

Nor would selection of § 1197.5 create unnecessary procedural complexity and uncertainty in Bivens actions. If the causes of action covered by § 1197.5 were more analogous to Bivens actions involving employment discrimination, it rather than Cal. Code Civ.Proc. § 338(1) would apply because under California law, a special statute of limitations controls over a general one. Aetna Casualty & Surety Co. v. Pacific Gas & Electric Co., supra, 264 P.2d at 6–7 (1953). The possibility that a special statute of limitations can be applied to a federal cause of action inevitably generates some uncertainty about the controlling limitations period. But presumably the California legislature would not create a special statute of limitations for a statutory cause of action unless the need for a limitations period different from the general one of § 338(1) were substantial. The interest in a different period may outweigh the interest in a certain rule for borrowing state statutes of limitations, which is an important but not overriding consideration. See pp. 1342–1343, supra. Where the state has a clear preference for a certain statute of limitations and where the borrowing of that statute is completely consistent with federal policies other than the policy of certainty, that statute should be applied even if it creates some uncertainty and confusion as a result.

However, as the Court concluded at p. 1349, supra, the state actions covered by § 1197.5 are not sufficiently analogous to permit borrowing, and a state statute of limitations cannot be borrowed unless both branches of the test for borrowing are met.

### D. *California Code of Civil Procedure § 338(1)*

The state statute of limitations applicable to this *Bivens* action is California Code of Civil Procedure § 338(1), which requires that "[a]n action upon a liability created by statute, other than a penalty or forfeiture," must be brought within three years after the cause of action accrued.

█ Although a cause of action inferred from the Constitution is not literally a statutory cause of action, constitutional and statutory causes of action are analogous in the context of statutes of limitations.

> "[T]he expression 'liability created by statute' is comprehensive enough to include liabilities created by constitutional authority. It was intended to cover liability imposed by some written law, either constitutional or statutory * * *. * * * It meant a liability imposed by the sovereignty in contradistinction to liability growing out of tort or contract." *Santa Cruz County v. McKnight*, 20 Ariz. 103, 177 P. 256, 259 (1918) (suit against county for backpay when county changed salary in violation of constitution).

*Contra, Clark v. Water Comm'rs. of Amsterdam*, 148 N.Y. 1, 42 N.E. 414, 415-416 (1895) (liability for just compensation for taking under eminent domain power arises under constitution, not statute); *Land v. Wilmington & W. R. Co.*, 107 N.C. 72, 12 S.E. 125, 126 (1890) (same). The California definition of liabilities created by statute is consistent with the Arizona approach: "A liability created by statute is one in which no element of agreement enters." *Gardner v. Basich Bros. Construction Co.*, 44 Cal.2d 191, 281 P.2d 521, 522 (1955). California courts have relied on the *McKnight* case to give a broad interpretation to the term, "liability created by statute." *Raymond v. Christian*, 24 Cal.App.2d 92, 74 P.2d 536, 548 (1938) (action to recover wages authorized by statute falls within § 338(1)). In *City of Los Angeles v. Belridge Oil Co.*, 42 Cal.2d 823, 271 P.2d 5, 12 (1954), the California Supreme Court adopted another liberal interpretation of § 338(1) when it held on an alternative ground that § 338(1) covered liabilities created by municipal ordinance authorized by state statute *or* constitution. Federal courts have also noted the similarity between liabilities created by statute and those created by the federal constitution for statute of limitations purposes. *See Fielder v. Moore*, 423 F.Supp. 62, 63 (W.D.N.C. 1976); *Ervin v. Lanier*, 404 F.Supp. 15, 20 (E.D.N.Y.1975) (*dictum*). *But see Regan v. Sullivan, supra*, 417 F.Supp. at 403, *rev'd*, 557 F.2d 300, 307 (2 Cir. 1977) (N.Y. statute of limitations for liability created by statute possibly applicable).

█ The California cases applying trespass and property damage statutes of limitations to actions against public entities for unconstitutional takings (*see* pp. 1344–1345, *supra*) do not implicitly reject this broad reading of § 338(1). The result in those cases was correct even if § 338(1) does generally apply to actions based on liabilities created by a constitution because a special statute of limitations, like the one for trespass, controls over a general statute of limitations, like § 338(1) when both are applicable. *Aetna Casualty & Surety Co. v. Pacific Gas & Electric Co., supra*, 264 P.2d at 6 (special statute of limitations governed despite assumption that § 338(1) also applied). The cases applying special statutes of limitations to taking cases are consistent with the Court's application of § 338(1) to a *Bivens* action in the absence of an applicable statute of limitations.

Another arguable reason why the term "liability created by statute" does not include liabilities created by constitution under California law involves Cal.Code Civ. Proc. § 359. Section 359 imposes a three-year statute of limitations on actions against defendants and shareholders of corporations "to enforce a liability created by law." In *Coombes v. Getz*, 217 Cal. 320, 18 P.2d 939, 945–946 (1933), the Supreme Court held that a liability created by law within the meaning of § 359 includes a liability arising under the California Constitution that did not exist at common law because the constitutional liability of corporate directors and shareholders was not the same as their common law liability. The

predecessors of §§ 338(1) and 359 were enacted contemporaneously in 1850, and their common origin suggests that the term "liability created by law" was deliberately chosen as a broader term than "liability created by statute."

Defendants have identified nothing in the legislative history of §§ 338(1) and 359 to indicate that the legislature chose the term "liability created by statute" in order to exclude liabilities created by the constitution. Indeed, with the exception of suits against public entities under the taking clause, the only suits which are brought directly under the California Constitution are suits against corporate shareholders and directors, and suits under the taking clause fit into separate statutes of limitations, *see* pp. 1344–1345, *supra*, thereby eliminating the need for special legislative action concerning limitations provisions for those constitutional suits. Accordingly, § 359 does not provide a sound basis for concluding that *Bivens* actions do not fall within the scope of § 338(1).

There are strong reasons of federal policy for the adoption of § 338(1) for *Bivens* actions. Three years, the statute of limitations for § 1983 actions in California (*see* p. 1345, *supra*), is certainly long enough to satisfy the interest in a generous statute of limitations for civil rights actions, and it creates uniformity between *Bivens* and § 1983 actions. A single statute of limitations for all *Bivens* actions avoids the complexities involved in selecting a statute of limitations for each type of federal constitutional right depending on the nature of its closest state law analog.

Section 338(1) is the appropriate statute of limitations for *Bivens* actions because it is both sufficiently analogous to state actions covered by that provision and sufficiently consistent with the federal policies underlying *Bivens* actions.

### E. *Federal Statute of Limitations*

Because § 338(1) applies to the instant action, creation of a special federal statute of limitations is unnecessary.

The Court emphasizes that it does not decide whether this state statute of limitations applies to a *Bivens* action involving employment discrimination by a federal agency, as distinguished from a *Bivens* action involving employment discrimination by a nominally private entity in a symbiotic relationship with the federal government. Most employment discrimination suits against federal agencies are governed by Title VII, which provides the exclusive remedy in cases where it applies. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Scott v. Perry*, 569 F.2d 1064, 1065 (9 Cir. 1978). Under 42 U.S.C. § 2000e–16(c), most victims of employment discrimination by a federal agency must file suit within thirty days of receipt of notice of the agency's final decision or within thirty days of the final decision of the Civil Service Commission if an appeal to that body is taken.

 Some classes, like aliens, *Espinoza v. Farah Mfg. Co., supra*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287, and transsexuals, *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659 (9 Cir. 1977), are not protected by Title VII. By making the Title VII remedy exclusive, Congress did not intend to deprive members of those classes of any remedy for federal employment discrimination, so they can still maintain, for example, a *Bivens* action against the discriminating agency. That does not mean, however, that the thirty-day limitations period of § 2000e–16(c) does not apply to those suits against federal agencies. In some circumstances, federal courts borrow a federal statute of limitations applicable to an analogous federal cause of action instead of a state statute of limitations applicable to an analogous state cause of action, *see* p. 1339, *supra*, and the thirty-day provision of § 2000e–16(c) is perhaps the statute that should be borrowed when a federal agency is sued. Congress intended to end the exposure of federal agencies to employment discrimination suits thirty days after final agency action. To give members of groups unprotected by Title VII longer to sue than members of protected groups would violate this congressional intent, and there seems

to be no reason why aliens and transsexuals need more time to prepare a lawsuit after final agency action than do members of other minority groups.

This reasoning does not apply to the employment decisions of nominally private, constitutionally federal entities like defendants in this case are alleged to be. The thirty-day statute of limitations of § 2000e–16(c) depends on the assumption that a federal employee has ample opportunity to investigate and prepare his case while he pursues internal agency remedies and that opportunities for settlement are generally exhausted as well during that period. That assumption does not hold true in the case of employees of nominally private entities which may often lack the elaborate internal procedures available to federal employees. Those employees therefore require more than thirty days after the entity has acted to investigate and prepare their case and to pursue settlement opportunities.

Although application of the thirty-day limitations provisions of 42 U.S.C. § 2000e–16(c) is improper in this case, it may be proper in employment discrimination suits by aliens against federal agencies. The Court need not decide that question here.

### F. Need for Congressional Action

The borrowing of § 338(1) is not wholly satisfactory. As the Court suggested in its discussion of California Labor Code § 1197.-5, there is good reason to believe that California law contemplates the bringing of employment discrimination suits like this one in considerably less than three years. See pp. 1348–1349, supra.

Regardless of California policy, Congress might prefer a different limitations period than three years, and a shorter one may well be more consistent with federal policy. See p. 1341, supra. "In borrowing a state period of limitations for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit * * * on the prosecution of a closely analogous claim." Johnson v. Railway Express Agency, Inc., supra, 421 U.S. at 464, 95 S.Ct. at 1722. "State legislatures do not devise their limitations periods with national interests in mind * * *," Occidental Life Ins. Co. v. E. E. O. C., supra, 432 U.S. at 367, 97 S.Ct. at 2455, and there is no guarantee that Congress would make this "value judgment concerning the point at which the interests in favor of protecting valid [Bivens] claims are outweighed by the interests in prohibiting the prosecution of stale ones." Johnson v. Railway Express Agency, Inc., supra, 421 U.S. at 463–464, 95 S.Ct. at 1722.

The inherent arbitrariness of statutes of limitations makes them a peculiarly appropriate subject for legislative rather than judicial control. See Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137 (1945). The failure of Congress to establish federal statutes of limitations for federal causes of action forces federal courts into an uncertain, problematic search. See Note, Statutes of Limitations in Federal Civil Rights Litigation, 1976 Ariz.St.L.J. 97, 141 (1977); Note, Federal Statutes Without Limitations Periods, 53 Colum.L.Rev. 68, 77–78 & n. 63 (1953) (consensus on need for congressional action). But as long as this congressional default continues, the process of judicial borrowing of state statutes of limitations is the least unsatisfactory alternative.

### IV. RELATION BACK OF FIFTH AMENDMENT CLAIM

Plaintiff filed his original complaint on August 9, 1976, within three years of March 26, 1974, when he was allegedly discriminated against. Plaintiff did not amend his complaint to include his Bivens claim based on the Fifth Amendment until June 20, 1977, after the expiration of the three-year statute of limitations for Bivens actions in California. Consequently, plaintiff's Fifth Amendment claim is time-barred unless it relates back to the date on which his original complaint was filed.

As a threshold matter, defendant NEII argues that the Court should look not to the date on which the complaint was filed but to the date on which it was served in order to determine when plaintiff tolled the stat-

ute of limitations. NEII concedes that under Fed.R.Civ.P. 3, a civil action is usually commenced by filing a complaint, but NEII contends that Rule 3 is predicated on the assumption of service of process within a reasonable time after filing and that unnecessary delay in service, which allegedly occurred in this case, requires the Court to look to the date of service rather than the date of filing.

The courts are divided on this issue. *Compare Weaver v. United California Bank*, 350 F.Supp. 1373, 1376 (N.D.Cal.1972) (date of filing regardless of delay in service); *with Newhart v. George F. Hellick Coffee Co.*, 325 F.Supp. 1047, 1048 (E.D.Pa. 1971); *see generally* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056 (1969). The Court need not decide this issue because although plaintiff may have been dilatory, he accomplished service of process on NEII as well as filing within the three-year limitations period. The United States Marshal served NEII with the original complaint on February 7, 1977, so even if plaintiff's Fifth Amendment claim relates back to February 7, 1977, instead of August 9, 1976, it is still timely commenced. For the sake of convenience, the Court will refer to the relation back of plaintiff's amended complaint to the date of filing of the original complaint rather than to the date of service.

The relation back of plaintiff's amended complaint to the date of filing of his original complaint depends on Fed.R.Civ.P. 15(c), which provides in relevant part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Several factors determine whether the amended claim arises out of the conduct set forth in the original pleading. Although it is not specifically mentioned in Rule 15(c), the basic issue is the adequacy of the notice to the defendant given by the original pleading. *Rural Fire Protection*

*Co. v. Hepp*, 366 F.2d 355, 362 (9 Cir. 1966); *Rosenberg v. Martin*, 478 F.2d 520, 526 (2 Cir. 1973); *Goodman v. Poland*, 395 F.Supp. 660, 684 (D.Md.1975); *Pendrell v. Chatham College*, 386 F.Supp. 341, 345 (W.D.Pa. 1974); *Humphries v. Going*, 59 F.R.D. 583, 587 (E.D.N.C.1973); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497, at 495–499 (1971) (hereinafter cited as Wright & Miller). Notice is critical because "the rationale of the relation back rule is to ameliorate the effect of the statute of limitations * * *," *id.*, at 495, and the purpose of the statute of limitations is to protect defendants from claims of which they have not received notice within a reasonable time after they accrued. Courts have generally held that a defendant receives adequate notice if the original complaint described "the general fact situation out of which the amendment arose." *Tabacalera Cubana, S. A. v. Faber, Coe & Gregg, Inc.*, 379 F.Supp. 772, 776 (S.D.N.Y.1974); *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6 Cir. 1973). Another relevant factor is the overlap of evidence between the original and amended pleadings, *Rural Fire Protection Co. v. Hepp, supra*, 366 F.2d at 362, although Rule 15(c) does not incorporate any single mechanical test for relation back. 6 Wright & Miller, *supra*, at 499 and 504.

In close cases, the prejudice to the defendant from allowing the claim to relate back may be dispositive. " '[I]n cases where * * * there is some doubt as to whether the cause is clearly barred, the rule should be liberally construed, [ * * * ] and especially is this so where the defendant is put to no disadvantage.' " *Humphries v. Going, supra*, 59 F.R.D. at 587, quoting *Overfield v. Pennroad Corp.*, 39 F.Supp. 482, 486 (E.D.Pa.1941); *see Rural Fire Protection Co. v. Hepp, supra*, 366 F.2d at 362 (relation back "especially if no disadvantage will accrue to the opposing party"); *Wall v. Chesapeake & Ohio Railway Co.*, 339 F.2d 434 (4 Cir. 1964); *In re Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 337, 346 (N.D.Okl.1974); *Goodman v. Poland, supra*, 395 F.Supp. at 685.

It is true that a defendant can successfully raise a statute of limitations defense even if he has not in fact been prejudiced by the plaintiff's delay in bringing suit. Furthermore, some of the cases making prejudice an issue under Rule 15(c) rely on decisions interpreting Rule 15(a) which governs the amendment of pleadings, even though the question whether an amendment should be permitted under the liberal pleading policy of the Federal Rules of Civil Procedure involves different considerations than the question whether an amendment should be permitted to relate back. *See Wall v. Chesapeake & Ohio Railway Co., supra,* 339 F.2d at 434–435; *Tabacalera Cubana, S. A. v. Faber, Coe & Gregg, Inc., supra,* 379 F.Supp. at 776–777. Nevertheless, actual prejudice is relevant to statutes of limitations, which are designed in part to protect defendants against lost witnesses, evidence, and memories. *See Order of R.R. Telegraphers v. Railway Express Agency, Inc., supra,* 321 U.S. at 349, 64 S.Ct. 582. Consequently, in a case where the defendant is arguably on notice and where both the original claim and the amendment involve at least substantially overlapping occurrences, it is reasonable to inquire into the prejudice which the defendant would suffer if required to defend against a claim that was explicitly raised only after the statute of limitations expired.

Rule 15(c) is to be liberally construed. *Rural Fire Protection Co. v. Hepp, supra,* 366 U.S. at 362; *Goodman v. Poland, supra,* 395 F.Supp. at 684. Some courts have suggested that "[i]t is not unreasonable to require [the defendant] to anticipate all theories of recovery and prepare its defense accordingly." *Zagurski v. American Tobacco Co.,* 44 F.R.D. 440, 443 (D.Conn. 1967); *Barthel v. Stamm,* 145 F.2d 487, 491 (5 Cir. 1944), *cert. denied,* 324 U.S. 878, 65 S.Ct. 1926, 89 L.Ed. 1430 (1945). This approach does have its limits. Rule 15(c) does not require the defendant to master the plaintiff's case before the plaintiff himself does. Nor does it "permit lawyers to endlessly answer the question: How many causes of action can you find in this fact situation? much as they might have done

years earlier in law school examinations." *Pendrell v. Chatham College, supra,* 386 F.Supp. at 345.

With these principles in mind, the Court considers the relation back of plaintiff's Fifth Amendment claim.

The major difference between plaintiff's original and present claim involves a change in the capacity of defendants. They are now sued as instrumentalities of the federal government instead of as private parties. Normally, an amendment which merely changes the capacity in which the defendant is sued relates back because the facts from which the claim arises are unchanged and the defendant has notice of those facts from the beginning. *Hoffman v. Halden,* 268 F.2d 280, 304 & n. 31 (9 Cir. 1959) (dictum); 6 Wright & Miller, supra, § 1498, at 514 & n. 5; 3 Moore's Federal Practice ¶ 15.15[4.–1], at 1039 & n. 4 (2d ed. 1974). In the usual case, however, the defendant is liable in both of the capacities in which he is sued, and the change in capacity is in effect incidental. In this case, the change is crucial, and if it cannot be made, plaintiff loses. This change in capacity introduces a new and factually complicated issue which adds to the nature of the proof to be offered at trial.

The change in defendants' capacity is not substantial enough to prevent the relation back of the amendment to the date of filing of the original complaint. The basis of plaintiff's claim is that he was illegally discharged. That was the essence of his initial complaint under Title VII and 42 U.S.C. § 1985, and that is the essence of his Fifth Amendment claim now. Certainly an amendment which asserts a claim under a different statute (or under the Constitution instead of a statute) but which arises out of the same conduct relates back to the date of filing of the original complaint. *Tiller v. Atlantic Coast Line R.R. Co.,* 323 U.S. 574, 581, 65 S.Ct. 421, 89 L.Ed. 465 (1945); *Sierra Club v. Morton,* 400 F.Supp. 610, 648 n. 68 (N.D.Cal.1975); 6 Wright & Miller, supra, § 1497, at 499–500. Plaintiff's original complaint gave defendant no-

tice of the general facts of his discharge. It also mentioned that the federal government funded EINRTP, although the legal significance of that connection was not identified.

Rule 15(c) tolerates the relation back of amendments which make changes at least as substantial as these. In *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1211 (9 Cir. 1970), an amendment adding a self-dealing claim to a securities fraud case related back to non-suitability and churning claims involving the same broker but different securities. There is as much "identity," *ibid.*, between self-dealing claims and non-suitability and churning claims as there is between Title VII and § 1985 claims and Fifth Amendment claims. *Cf. N. Y. Central & Hudson River R.R. Co. v. Kinney*, 260 U.S. 340, 43 S.Ct. 122, 67 L.Ed. 294 (1922) (amendment adding allegation concerning interstate commerce in federal cause of action relates back). In addition, defendants have not alleged any specific prejudice caused by the introduction of the Fifth Amendment claim more than three years after the alleged discrimination occurred. Defendants' general and conclusory allegations of prejudice are insufficient. *See Hageman v. Signal L. P. Gas, Inc., supra*, 486 F.2d at 484–485, *quoting Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y.1970); *Goodman v. Poland, supra*, 395 F.Supp. at 685.

Because the amendment adding the Fifth Amendment claim relates back to the date of the original pleading and because the original pleading was filed and served on defendants within the applicable three-year statute of limitations, plaintiff's Fifth Amendment claim is not time-barred.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss this action on statute of limitations grounds is denied.